STATE OF CONNECTICUT *v.* RAY DAVID HAHN
(13324)

PETERS, C. J., SHEA, CALLAHAN, GLASS and HULL, Js.

Argued April 14—decision released May 24, 1988

*Michael J. McClary,* with whom, on the brief, was *John J. Keefe, Jr.,* for the appellant (defendant).

*James A. Killen,* deputy assistant state's attorney, with whom, on the brief, were *John J. Kelly,* chief state's attorney, *Domenick Galluzzo,* deputy chief state's attorney, *James G. Clark,* assistant state's attorney, *Cathryn Krinitsky,* deputy assistant state's attorney, and *Jack Fischer,* legal intern, for the appellee (state).

PETERS, C. J. The dispositive issue in this appeal is whether improper notarization of an incomplete mortgage deed constitutes forgery in the second degree, as defined by General Statutes § 53a-139 (a) (1),[1] in light of an information charging the defendant with false completion of a mortgage deed. The state alleged that the defendant, Ray David Hahn, with intent to defraud, deceive or injure Peter T. Dallicker, Martha H. Dallicker and Gerda Larras, had falsely completed their mortgage deed to the Dartmouth Plan, Inc. (Dartmouth Plan), by having added his name as notary and having falsely acknowledged that these individuals had per-

---

[1] General Statutes § 53a-139 (a) (1) provides: "FORGERY IN THE SECOND DEGREE: CLASS D FELONY. (a) A person is guilty of forgery in the second degree when, with intent to defraud, deceive or injure another, he falsely makes, completes or alters a written instrument or issues or possesses any written instrument which he knows to be forged, which is or purports to be, or which is calculated to become or represent if completed: (1) A deed, will, codicil, contract, assignment, commercial instrument or other instrument which does or may evidence, create, transfer, terminate or otherwise affect a legal right, interest, obligation or status."

sonally appeared before him to execute this written instrument. After a jury verdict finding the defendant guilty as charged, the defendant unsuccessfully moved the trial court for a new trial or a judgment of acquittal. The defendant has appealed from the trial court's judgment of conviction. We find error.

The jury could reasonably have found the following facts. The defendant was employed as the credit manager of East Coast Siding Company (East Coast Siding), a contracting firm engaged in making home improvements. He had become a notary public at his employer's request. As credit manager, he processed credit applications submitted by the company's sales representatives. For mortgage financing, East Coast Siding relied upon the Dartmouth Plan. Such mortgages were initiated by having a sales representative ask his customers to sign a form denominated "Mortgage Deed" that designated the Dartmouth Plan as mortgagee. After notarization of the customers' signatures by the defendant, and the addition of the signatures of one or more witnesses, the mortgage was then forwarded to the Dartmouth Plan, which undertook to make the relevant credit checks of prospective mortgagors. Upon approval of credit, the Dartmouth Plan inserted the description of the mortgaged property in the mortgage deed and saw to its recordation.

The underlying transaction that led to the charges against the defendant arose out of a home improvement contract entered into in early September, 1985, between East Coast Siding and Peter and Martha Dallicker, and their son, Peter Dallicker, Jr. The Dallickers had contacted Sears, Roebuck and Company (Sears) in response to a Sears advertisement, and Sears, in accordance with prior arrangements of which the Dallickers were unaware, had forwarded their call to East Coast Siding. As the result of negotiations with an East Coast Siding sales representative, the

Dallickers agreed to purchase windows and gutters to be installed at their New Fairfield family home, of which Gerda Larras was a co-owner. Although the Dallickers had expected financing for this acquisition to be arranged in accordance with their unsecured Sears line of credit, they unwittingly signed a document entitled "Mortgage Deed" that named the Dartmouth Plan as mortgagee.

The East Coast Siding sales representative forwarded a bundle of papers signed by the Dallickers to the East Coast Siding home office. There, the mortgage deed bearing their signatures, and that of Gerda Larras, was "witnessed" by Mark Scafariello, East Coast Siding's general manager, and then forwarded to the Dartmouth Plan. Because the mortgage deed did not then contain the requisite notarization, an employee of the Dartmouth Plan, Nancy Perretta, asked the defendant to come to the Dartmouth Plan office in Rocky Hill on September 3, 1985, to remedy this omission. In Perretta's presence, the defendant added his name as notary public in the acknowledgement portion of the mortgage deed. None of the mortgagors whose signatures he was acknowledging was then present. Thereafter Perretta signed her name to the deed as a witness to the signatures of the mortgagors, although at trial she testified that she was witnessing the defendant's notarization. No description whatsoever of the Dallicker property was on the deed at that time. At some time thereafter, that information was inserted into the mortgage deed and it was recorded by the town clerk in New Fairfield on November 23, 1985.[2]

---

[2] The Dallickers' complaint about their home improvement contract was limited to its financial aspects. Although the work done by East Coast Siding was acceptable, and although they had expected to incur finance charges to pay for the work, they had not understood that the Dartmouth Plan would assume the status of a secured creditor with a mortgage on their home. The identity of the Dartmouth Plan became known to them upon the receipt of payment notices, but they learned of the recordation of the mortgage only when they decided to sell their property.

On this factual showing, the defendant was convicted of forgery in the second degree. In this appeal, the defendant claims the trial court erred: (1) in denying his motions for acquittal; (2) in charging the jury about various allegedly irrelevant aspects of the forgery statute; and (3) in denying his motion for a mistrial. Since we agree with the first claim of error, we need not address the latter two.

The defendant claims that the trial court should have ordered his acquittal because the evidence was insufficient to prove the charge against him, namely that he had falsely completed an incomplete mortgage deed with intent to defraud, deceive or injure, in violation of General Statutes § 53a-139 (a) (1). In assessing this claim, we need to refer to the precise contours of the charge against the defendant, which the state amplified in a long form information filed in response to a court order by *Geen, J.,* granting the defendant's motion for a bill of particulars and for a statement of essential facts.[3] The state accused the defendant of having *"falsely completed said written instrument* [the mortgage deed from Peter T. Dallicker, Martha H. Dallicker and Gerda Larras] when he added/inserted his name as Notary and he acknowledged that Peter T. Dalliker [sic], Martha H. Dalliker [sic] and Gerda Larras personally appeared before him in the County of Fairfield, Connecticut and that they executed said instrument on September 3, 1985, *thereby transforming an incomplete written instrument into a complete mortgage deed* without the authority of anyone entitled to grant it, *so that such complete mortgage deed appeared on said land records* and purported to be in all respects an authentic creation of or fully authorized by Peter T. Dalliker [sic], Martha H. Dalliker [sic], and Gerda

[3] The record reveals that the statement of essential facts as well as the bill of particulars in this case are identical with the long form information that the state supplied to the defendant.

Larras, its ostensible makers, in violation of Connecticut General Statutes Section 53a-139." (Emphasis added.)

The defendant maintains that the evidence adduced at trial did not prove, beyond a reasonable doubt, either that he had "falsely completed" the Dallicker mortgage or that he had possessed the requisite criminal intent to defraud, deceive or injure. On appeal, our review of such a claim of error involves a two step process. We first construe the evidence presented at trial in a light most favorable to sustaining the verdict, and then determine whether the jury could reasonably have found " 'upon the facts established and the inferences reasonably drawn therefrom, that the cumulative effect of the evidence established guilt beyond a reasonable doubt. . . .' " (Citations omitted.) *State* v. *Stepney,* 191 Conn. 233, 255, 464 A.2d 758 (1983), cert. denied, 465 U.S. 1084, 104 S. Ct. 1455, 79 L. Ed. 2d 772 (1984); *State* v. *Cavallo,* 200 Conn. 664, 673, 513 A.2d 646 (1986).

The evidence in this case would have permitted the jury to find that the defendant intentionally notarized a false acknowledgement on a mortgage deed. There was, however, no evidence before the jury that the mortgage deed, at the time of the defendant's improper notarization, contained any description whatsoever of the mortgaged property. To the contrary, evidence from the state's own witness indicated that the deed contained only the signatures of the intended mortgagors, the name of the intended mortgagee, and Scafariello's signature as witness.

The question before us is whether this evidence establishes guilt beyond a reasonable doubt of the crime of forgery in the second degree as that crime was particularized in a long form information that repeatedly emphasized the defendant's wrongful completion of a

mortgage deed. Once a detailed information has been filed, "the state is limited to proving that the defendant has committed the offense in substantially the manner described." *State* v. *Ruiz,* 171 Conn. 264, 270, 368 A.2d 222 (1976); *State* v. *Eason,* 192 Conn. 37, 40–41, 470 A.2d 688 (1984); *State* v. *Roque,* 190 Conn. 143, 154–55, 460 A.2d 26 (1983).

In approaching this question, we are aided by the provisions of the penal code that provide definitions for forgery and related offenses. "Complete written instrument" is defined in General Statutes § 53a-137 (2) as "one which purports to be a genuine written instrument fully drawn with respect to every essential feature thereof." Consistently, an "incomplete written instrument," under § 53a-137 (3), "requires additional matter in order to render it a complete written instrument." A person "falsely completes" a written instrument, according to § 53a-137 (5), when he "transforms an incomplete written instrument into a complete one, without the authority of anyone entitled to grant it, so that such complete instrument appears or purports to be . . . fully authorized by its ostensible maker . . . ."

Applying these definitions in the present circumstances, we must decide whether a mortgage deed that contains no description of the mortgaged property can reasonably be held to be "fully drawn with respect to every essential feature thereof." We conclude that it cannot. Whether we turn to the requirements of our recordation statutes; General Statutes §§ 47-5, 47-10 and 47-36c;[4] or to those of the statute of frauds; Gen-

---

[4] "[General Statutes] Sec. 47-5. CONVEYANCES TO BE IN WRITING AND ACKNOWLEDGED. All conveyances of land shall be: (1) In writing; (2) if the grantor is a natural person, subscribed, with or without a seal, by the grantor with his own hand or with his mark with his name annexed to it or by his attorney authorized for that purpose by a power executed, acknowledged and witnessed in the manner provided for conveyances or, if the grantor

eral Statutes § 52-550;[5] it is evident that a mortgage is unenforceable without identification of the mortgaged property. "[C]ontracts for the sale of real estate must contain with certainty, without regard to parol proof, at least the essentials which describe the subject of the sale, its terms, and the parties to the contracts, thereby furnishing evidence of a complete agreement." *Robert Lawrence Associates, Inc.* v. *Del Vecchio,* 178 Conn. 1, 11, 420 A.2d 1142 (1979); *Montanaro Bros. Builders, Inc.* v. *Snow,* 190 Conn. 481, 485–86, 460 A.2d 1297 (1983). In this state, mortgages are conveyances of legal title; *Conference Center Ltd.* v. *TRC,* 189 Conn.

is a corporation or partnership, subscribed by a duly authorized person; (3) acknowledged by the grantor, his attorney or such duly authorized person to be his free act and deed; and (4) attested to by two witnesses with their own hands."

"[General Statutes] Sec. 47-10. DEEDS TO BE RECORDED. No conveyance shall be effectual to hold any land against any other person but the grantor and his heirs, unless recorded on the records of the town in which the land lies. When a conveyance is executed by a power of attorney, the power of attorney shall be recorded with the deed, unless it has already been recorded in the records of the town in which the land lies and reference to the power of attorney is made in the deed."

"[General Statutes] Sec. 47-36c. STATUTORY FORMS FOR DEEDS. The forms set forth in this section may be used and are sufficient for their respective purposes. They shall be known as 'Statutory Form' and may be referred to as such. Nothing in this chapter precludes the use of any other legal form of deed or mortgage. . . .

MORTGAGE DEED

. . . of . . . to secure payment of . . . dollars with interest payable as provided in a certain promissory note dated . . . with final maturity on . . . grant to . . . of . . . with MORTGAGE COVENANTS . . .

(Description and Encumbrances, if any
and any additional provisions)

This mortgage is made upon the STATUTORY CONDITION
Signed this . . . day of . . . , 19 . . .
Witnessed by:

(Acknowledgment)"

[5] "[General Statutes] Sec. 52-550. STATUTE OF FRAUDS; WRITTEN AGREEMENT OR MEMORANDUM. (a) No civil action may be maintained in the following cases unless the agreement, or a memorandum of the agreement, is made in writing and signed by the party, or the agent of the party, to

212, 218, 455 A.2d 857 (1983).[6] Accordingly, we conclude that there was insufficient evidence to support the defendant's conviction for forgery insofar as he was accused of having falsely completed the Dallicker mortgage.

The state argues that the defendant's conviction can, however, be sustained on an alternate ground, that the defendant falsely completed not the mortgage deed itself but the acknowledgement portion of the deed. The state concedes, as it must, that the long form information charged the defendant only with false completion of the Dallicker mortgage deed. Nonetheless, the state maintains that it can rely on a theory of variance to invoke that part of § 53a-137 (2)'s definition of a "complete written instrument" that states that "[a]n endorsement, attestation, acknowledgement or other similar signature or statement is deemed both a complete written instrument in itself and a part of the main instrument in which it is contained or to which it attaches." The evidence at trial, according to the

---

be charged: (1) Upon any agreement to charge any executor or administrator, upon a special promise to answer damages out of his own property; (2) against any person upon any special promise to answer for the debt, default or miscarriage of another; (3) upon any agreement made upon consideration of marriage; (4) upon any agreement for the sale of real property or any interest in or concerning real property; or (5) upon any agreement that is not to be performed within one year from the making thereof.

"(b) This section shall not apply to parol agreements for hiring or leasing real property, or any interest therein, for one year or less, in pursuance of which the leased premises have been or are actually occupied by the lessee, or any person claiming under him, during any part of the term."

[6] The state argues that parol evidence is always admissible between immediate parties to a real property transaction. The cases upon which the state relies for this novel proposition are, however, distinguishable because they involve the use of parol evidence not to establish missing property descriptions but to interpret ambiguous property descriptions in the context of boundary disputes. *F. & AK, Inc.* v. *Sleeper,* 161 Conn. 505, 510–11, 289 A.2d 905 (1971); *Fogg* v. *Wakelee,* 40 Conn. Sup. 272, 283, 492 A.2d 843 (1983), aff'd, 196 Conn. 287, 492 A.2d 511 (1985). These cases do not persuade us that a mortgage deed that lacks a property description can properly be characterized as a "complete written instrument."

state, would support a conviction on this latter basis, the defendant having admitted the signature on the acknowledgement portion of the mortgage deed to be his.[7] Arguing that, on this record, an amendment at trial to conform the information to the proof would have been permitted, the state urges us to hold that the defendant was on notice of his potential culpability for his false acknowledgement of the Dallicker mortgage. We are unpersuaded.

This court has, in limited circumstances, permitted a criminal conviction to be grounded on a variance from the precise contours of the crime that the information charged the defendant with having committed. When a defendant at trial has acquiesced in enlargement of the crime charged to include an alternative method of committing it, we have held that a deviation between the pleadings and the proof "does not rise to the level of a constitutional violation unless the record establishes a lack of proper notice or prejudice to the defendant." *State* v. *Franko,* 199 Conn. 481, 493, 508 A.2d 22 (1986); *State* v. *Scognamiglio,* 202 Conn. 18, 21–25, 519 A.2d 607 (1987). In those cases, the predicated acquiescence was found in the defendant's failure to object to the admission of evidence on, and instructions to the jury about, the alternative method of committing the crime charged.

In this case, the record at trial demonstrates no acquiescence in enlargement of the crime charged. The defendant took vigorous exception, throughout, to the introduction of evidence unrelated to his allegedly

[7] We recognize that the defendant does not concede that his false acknowledgement suffices to prove his guilt of this alternate method of committing forgery in the second degree. At trial, the defendant vigorously resisted efforts by the state to explore the particulars of the acknowledgement. Mark Scafariello, the defendant's superior at East Coast Siding, testified that part of the acknowledgement was handwritten by someone other than the defendant. In light of our disposition of the defendant's appeal, we need not explore the further ramifications of this argument.

felonious completion of a mortgage deed. He similarly excepted to those portions of the trial court's instructions to the jury that went beyond the specific aspects of the statute that he had been charged with having violated, and continued, indeed, to press this issue in his claims of error on appeal to this court. Furthermore, even the state at trial explicitly justified its evidentiary proffers as consistent with the crime as charged in the long form information. In this vein, the state defended one of its requests for a jury instruction by stating: "One of the elements of the crime is falsely completing a written instrument in order for it to be a deed." On this record, the defendant had fair notice only of a charge of false completion of a mortgage deed and not of false completion of an acknowledgement.

In the absence of evidence sufficient to support the only crime with which the defendant was charged, his conviction of forgery in the second degree cannot stand. The trial court was in error in denying his motions for acquittal.

There is error, the judgment is set aside and the case is remanded with direction to render judgment of acquittal.

In this opinion the other justices concurred.