STATE OF CONNECTICUT *v.* CARTHANIEL BALDWIN
(14496)

CALLAHAN, BORDEN, BERDON, NORCOTT and KATZ, Js.

348

Argued October 30, 1992—decision released January 12, 1993

*Leonard M. Crone,* with whom was *Christopher San-tarsiero,* certified legal intern, for the appellant (defendant).

*Susan C. Marks,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *Richard Palombo,* assistant state's attorney, for the appellee (state).

KATZ, J. The defendant, Carthaniel Baldwin, appeals from a judgment of conviction, after a jury trial, of two counts of sale of a narcotic substance, of one count of possession of a narcotic substance with the intent to sell, and of being a subsequent offender of possession of a narcotic substance with the intent to sell, all in violation of General Statutes § 21a-277 (a).[1] He was thereafter sentenced to a term of imprisonment of thirty years on the subsequent offender count of possession of a narcotic substance with the intent to sell and seven years on each of the sale counts, to run consecutively, for a total effective sentence of forty-four years.

---

[1] "[General Statutes] Sec. 21a-277. (Formerly Sec. 19-480). PENALTY FOR ILLEGAL MANUFACTURE, DISTRIBUTION, SALE, PRESCRIPTION, DISPENSING. (a) Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person any controlled substance which is a hallucinogenic substance other than marihuana, or a narcotic substance, except as authorized in this chapter, for a first offense, shall be imprisoned not more than fifteen years and may be fined not more than fifty thousand dollars or be both fined and imprisoned; and for a second offense shall be imprisoned not more than thirty years and may be fined not more than one hundred thousand dollars, or be both fined and imprisoned; and for each subsequent offense, shall be imprisoned not more than thirty years and may be fined not more than two hundred fifty thousand dollars, or be both fined and imprisoned."

The defendant raises eight claims on appeal. In five of his claims, he asserts that the trial court improperly: (1) admitted evidence of his prior misconduct; (2) allowed expert testimony on an ultimate issue; (3) permitted testimony regarding destroyed evidence; (4) permitted thirty-one vials of cocaine to be admitted as evidence when only nine had been tested; and (5) imposed the sentence that it did. In two of the remaining three claims, the defendant asserts that the trial court deprived him of his right to a fair trial by: (1) neglecting to rule on his motion in limine regarding the use of his prior felony record for impeachment purposes; and (2) making inappropriate remarks during indoctrination of the jury. In his last claim, the defendant contends that there was insufficient evidence upon which to convict him of possession of a narcotic substance with the intent to sell. We affirm the judgment of the trial court.

The jury could reasonably have found the following facts. On November 1, 1991, the Bridgeport police department and the Connecticut state police were jointly participating in the Save Our Streets drug program in Bridgeport. On that day, Trooper Thomas Bennett and Officer Michael Radozycki were conducting a surveillance of building 23 in Father Panik Village, which was known for heavy narcotics activity. The surveillance was set up at approximately 11 a.m. on the second floor of a vacant building across the street from building 23. The officers used high-powered binoculars to observe the courtyard area of building 23 and were particularly interested in a jog hallway known to be an area where narcotics were sold.

At approximately 11:45 a.m., they observed the defendant standing in the jog hallway. A blue Hyundai was driven into the courtyard. The driver, Thomas Brooks, got out of his car, spoke with Mark Wheeler, and both men approached the defendant. Brooks

handed the defendant some money in exchange for several small items. Believing that a narcotics transaction had occurred, the officers radioed a description of Brooks and his vehicle to several unmarked police cars waiting in the area. Brooks drove the Hyundai out of the courtyard and headed west on Hamilton Avenue.

Seconds later, on the basis of the description transmitted over the police radio, Officer Carl Bergquist and Trooper Virgil Procaccini stopped the vehicle and arrested Brooks. Narcotics were not found on Brooks, but Barbara Stratton, who was riding in the front passenger seat, was found to be holding two plastic vials with green caps in her fist. The vials were subsequently tested by the state toxicology laboratory and found to contain crack cocaine.

The police continued their surveillance from the vacant building, and at approximately 12:25 p.m. they observed a blue Chevrolet driven by Sylvester Rogers enter the courtyard of building 23. Rogers got out of the vehicle and spoke with Wheeler. Both men then walked over to building 23, spoke with the defendant and handed him some money in exchange for several small items.

The surveillance officers again radioed the unmarked cars. In response to the radio transmission, Trooper Benjamin Chamble and Officer Robert Novia blocked a nearby street with their car. As the Rogers' vehicle approached, Chamble got out of the police vehicle and signaled to Rogers to stop. Rogers instead accelerated and drove onto the sidewalk, forcing Chamble to jump out of the way. A short chase ensued. Chamble and Novia were directly behind Rogers in their vehicle when Novia saw him throw several objects out of the driver's side window. Novia ultimately pulled the police vehicle alongside Rogers' vehicle and forced him off the road.

While Chamble arrested Rogers, Novia ran back and attempted to retrieve the discarded items. Although a crowd had gathered and began "picking up the evidence" that was lying in the middle of the street, Novia succeeded in recovering one plastic vial with a green top. Toxicological testing revealed that the vial contained crack cocaine.

Meanwhile, a crowd had gathered in the doorway of building 23. The surveillance officers called in all the available police officers involved in the operation to arrest the defendant and Wheeler. Just before the police cars reached the courtyard, however, the crowd dispersed and the defendant entered building 23. The unmarked police vehicles left the area, but Bergquist, after conducting an unsuccessful search for the defendant in building 23, decided to remain and hide upstairs in building 23 to see if the defendant would reappear.

Approximately forty-five minutes later, Wheeler and the defendant were spotted in the doorway of building 23 by the surveillance officers. The defendant handed Wheeler some paper money in exchange for a plastic bag. The surveillance officers radioed the unmarked cars to return to the area and alerted Bergquist. The defendant and Wheeler entered the building and began running up the stairs toward the second floor, where they were spotted by Bergquist. During a short chase, Bergquist observed the defendant reach into his right jacket pocket and throw a clear plastic baggie into an open, abandoned apartment. The defendant and Wheeler then ran out the front door and were apprehended by the officers. The surveillance officers continued to observe the scene from inside the vacant building and verified that the proper persons were arrested. Bergquist then retrieved the baggie from just inside the apartment doorway. The baggie contained thirty-one plastic vials. Field testing of one vial revealed the presence of cocaine.

Of the thirty-one vials discarded by the defendant, Joel Milzoff, a state toxicologist, tested nine, all of which were found to contain crack cocaine. Milzoff testified that the nine vials had been selected at random and that it had been a laboratory policy decision, based on the need for timely reporting of the results, not to test the remaining vials. Through Milzoff, the state introduced, over the defendant's objections, toxicological reports relating to the three vials connected to Rogers and Stratton. All three of those vials had tested positive for crack cocaine. The contents of the vials, however, had been destroyed by the division of consumer protection with permission of the police department because the underlying prosecutions of Rogers and Stratton had been resolved and it was mistakenly believed the retention of the cocaine was no longer necessary.

During a search of the defendant following his arrest, the police found $158 in his shoe and in his pants pocket. A search of Wheeler uncovered $705. No narcotics were found on Wheeler. At trial, Detective Nikoli Nikola testified that based on his experience and observation of narcotics users, a person possessing thirty-one vials would more likely be planning to sell them, rather than to use them himself.

Nikola also testified regarding prior misconduct of the defendant. Over the defendant's objection, Nikola testified that on April 13, 1989, he had been working as a member of a surveillance team assigned to observe suspected narcotics activity at an intersection in Father Panik Village. On that date, he had noticed the defendant motioning to and running up to cars. Following a brief verbal exchange with the occupants of the vehicles, the defendant had returned to his original position. Nikola testified that based on his training and experience he believed the defendant had been selling narcotics. After twenty minutes, the defendant was

apprehended and found to be in possession of eight or nine plastic vials containing a white powder that subsequently tested positive for cocaine.

The defendant did not testify, although he called several witnesses. Brooks, Stratton and Rogers denied purchasing any narcotics from the defendant. Wheeler testified that he had been "hanging around" the area to buy narcotics, but that he had not sold narcotics or helped the defendant sell narcotics. He explained that he had pleaded guilty to narcotics charges because he wanted to obtain treatment. Additional facts pertinent to the issues raised are set forth below.

I

In his first claim, the defendant contends that the trial court incorrectly allowed Nikola to testify that on April 13, 1989, he saw the defendant engage in what he believed was a sale of narcotics. We disagree.

The law regarding admission of prior criminal acts is clear. "As a general proposition, evidence of guilt of other crimes, because of its prejudicial nature, is inadmissible to prove that a defendant is guilty of the crimes with which he is charged. *State* v. *Holliday,* 159 Conn. 169, 172, 268 A.2d 368 (1970); *State* v. *Harris,* 147 Conn. 589, 599, 164 A.2d 399 (1960). Such evidence is admissible for other purposes, however, such as when it is particularly probative in showing such things as intent, an element in the crime, identity, malice, motive or a system of criminal activity, to name some exceptions to the rule. *State* v. *Brown,* 169 Conn. 692, 701, 364 A.2d 186 (1975). The trial judge, however, must determine in the exercise of judicial discretion that its probative value outweighs its prejudicial tendency. *State* v. *Moynahan,* [164 Conn. 560, 597, 325 A.2d 199, cert. denied, 414 U.S. 976, 94 S. Ct. 291, 38 L. Ed. 2d 219 (1973)]; *State* v. *Holliday,* supra, 173. Reversal is required only where an abuse of discretion is manifest

or where injustice appears to have been done. *State* v. *Hauck,* 172 Conn. 140, 144, 374 A.2d 150 (1976); *Thomas* v. *Thomas,* 159 Conn. 477, 480, 271 A.2d 62 (1970); 1 Wharton, Criminal Evidence (13th Ed.) § 241." *State* v. *Turcio,* 178 Conn. 116, 129, 422 A.2d 749 (1979), cert. denied, 444 U.S. 1013, 100 S. Ct. 661, 62 L. Ed. 2d 642 (1980).

In this case, the state introduced Nikola's testimony to prove intent. As we stated in *State* v. *Amaral,* 179 Conn. 239, 245, 425 A.2d 1293 (1979), evidence that the defendant had been a seller of narcotics in the past is relevant to "the nature of his possession of the drug at the time of the alleged offense." Because intent is almost always proved, if at all, by circumstantial evidence, prior misconduct evidence, where available, is often relied upon. See *State* v. *Tucker,* 181 Conn. 406, 415, 435 A.2d 986 (1980). It is true that the misconduct evidence introduced was remarkably similar both in kind and location to the evidence before the jury in this trial. These factors, however, make the evidence that much more probative. *United States* v. *Jones,* 913 F.2d 1552, 1566 (11th Cir. 1990) (probative value of evidence heightened by similarity); *United States* v. *Dunbar,* 614 F.2d 39, 42 (5th Cir.), cert. denied, 447 U.S. 926, 100 S. Ct. 3022, 65 L. Ed. 2d 1120 (1980) (virtually identical evidence "highly relevant" on intent issue).[2] The evidence regarding the April 13, 1989 incident was introduced for a valid purpose within the guidelines of *State* v. *Holliday,* supra.

[2] Although both these cases were decided pursuant to rule 404 (b) of the Federal Rules of Evidence, that rule is similar to Connecticut case law on the admission of other crimes evidence. It provides: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed. R. Evid. 404 (b). As is readily apparent, Connecticut case law parallels the exceptions found above.

The defendant argues that "there was more than ample evidence from which to infer intent [and thus] there was no need to allow the prior bad act testimony of Detective Nikola." This is a convenient escape hatch for purposes of this argument, but directly contradicts the sixth claim on appeal, wherein the defendant continues to argue that there was insufficient evidence of intent to sell upon which to convict him. Intent, or any other essential element of a crime, is always at issue unless directly and explicitly admitted before the trier of fact. *State* v. *Geyer,* 194 Conn. 1, 17, 480 A.2d 489 (1984) (*Shea, J.,* concurring); *State* v. *Johnson,* 190 Conn. 541, 550, 461 A.2d 981 (1983). Because intent was not admitted in this case, the trial court could reasonably have determined that the evidence had significant probative value to prove intent.

Once evidence of prior bad acts by the defendant has been found relevant, its prejudicial impact must be evaluated. Our analysis begins with the general rule excluding "the evidence so as to avoid the danger of prejudice against the defendant which may result from the admission of such evidence." (Internal quotation marks omitted.) *State* v. *Onofrio,* 179 Conn. 23, 28, 425 A.2d 560 (1979).

In admitting such evidence, the trial court's discretion is limited. *State* v. *Sierra,* 213 Conn. 422, 435, 568 A.2d 448 (1990). "The trial court's 'discretion' to admit other crimes evidence imports something more than leeway in decision-making. Discretion means a legal discretion, to be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice. . . . When assessing the admissibility of 'other crimes' evidence, the application of a mechanical test determining that the proffered evidence fits within some class of exception to the rule of nonadmissibility, may obscure sight of the underlying policy of protecting the

accused against unfair prejudice. That policy ought not to evaporate through the interstices of the classification. The problem is thus one of balancing the actual relevancy of the 'other crimes' evidence in light of the issues and the other evidence available to the prosecution against the degree to which the jury will probably be roused by the evidence." (Citations omitted; internal quotation marks omitted.) Id.

The record reflects that the trial court carefully balanced the probative value of the evidence against the prejudicial effect and determined that the prejudice did not outweigh its probative value. The evidence of prior criminal conduct was introduced only in connection with the third count and only on the issue of intent. Evidence is prejudicial "when it tends to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justified its admission into evidence." *United States* v. *Figueroa,* 618 F.2d 934, 943 (2d Cir. 1980). In this case, the prior crimes evidence was introduced with specific limiting instructions[3]

---

[3] Immediately before Detective Nikoli Nikola testified as to the defendant's prior misconduct, the trial court stated the following to the jury: "You'll recall in the beginning of the case I mentioned to you that this defendant was charged with three counts, and that each count is a separate crime, and each count has separate elements to it, which must be proved by the prosecutor.

"Well, the testimony that you are about to hear is relevant, and can only be used by you as evidence to one of the elements of the third count, which is the count which is possession with intent to sell. And the element of the part that it's—that's relevant to it, is on the issue of intent.

"So, I'm instructing you to make sure that you understand that the evidence that you are about to hear from this witness is to be used only as evidence in the third count of the information, and only on the issue of intent. And this evidence should not be considered by you in any way, shape or form as to the first two counts which allege sale."

In its final charge to the jury, the trial court instructed as follows: "Now, you heard testimony from Detective Nikola regarding an incident he observed involving the defendant, Mr. Baldwin, in April of 1989. You may consider that testimony only as to the third count of the information, possession of narcotics with the intent to sell. As to that count, you may

that were reiterated by the court in its final charge. No conviction for this conduct was mentioned and the state made minimal reference to this evidence during its closing argument.[4] We further note that this prior misconduct evidence did little to undermine the defendant's posture at trial because it only became relevant once the jury determined that he had been in possession of the narcotics. Moreover, by the time the misconduct evidence was offered, the jury had already heard evidence about the two sales to Rogers, Brooks and Stratton and, therefore, it is not likely that the jury was swayed, shocked or inflamed any further by the evidence in question.

Accordingly, we conclude that the trial court did not abuse its discretion in determining that the probative value of the testimony outweighed any prejudicial effect it might have had on the jury.

## II

In his second claim, the defendant asserts that the trial court's refusal to rule timely on whether the state

consider Detective Nikola's testimony only as to the element of intent of the vials which he possessed.

"I wrote something else myself. The testimony of Detective Nikola was, as you will recall, concerning his viewing of the defendant making what in his opinion [were] sales of narcotics on another occasion. I instructed you at that time that such evidence was being offered solely on the third count, which is the possession with intent to sell. On the element in that count of intent you should not view the evidence in any other manner except as I have instructed you."

The defendant did not object to either charge. When he first learned of the state's intent to offer this prior misconduct evidence, however, he objected and claimed that no limiting instruction would remove the prejudice.

[4] The state argued in relevant part: "You also heard testimony after all the six officers testified from a Detective Nikola of the narcotics and vice unit. And he testified as to something which occurred in April of 1989. And the judge is going to give you further instructions based upon that detective's testimony. So, I'm just going to leave it at that and let the judge instruct you on that detective's testimony."

could impeach him with his prior conviction if he testified caused him to refrain from taking the stand, thereby working a substantial injustice and depriving him of a fair trial. We disagree.

The facts pertinent to this claim are as follows. Prior to trial, the defendant filed a motion in limine to exclude any reference to his prior felony convictions. At a hearing held on March 20, 1991, the parties agreed that the only relevant conviction was a February, 1990 conviction for possession of a narcotic substance with the intent to sell. The trial court indicated that it would consider the issue and asked whether the defendant planned to testify. The defendant responded affirmatively. The assistant state's attorney added that he would be satisfied to ask only about unnamed felonies.

On March 26, 1991, during argument regarding the defense's motion to preclude the state's use of the defendant's prior misconduct in its case-in-chief, the trial court noted that it was still reserving its decision regarding the use of the 1990 conviction for impeachment purposes. The defendant indicated no objection to the court's reservation of its decision but merely reiterated his understanding that it was "the one that you were going to reserve ruling on till later on." Later that day, the trial court ruled that the evidence of the defendant's prior bad acts was admissible for a limited purpose, but made no further mention of whether the conviction itself would be admissible. The defendant gave no indication that he either needed or wanted an immediate decision.

On March 27, 1991, testimony was presented regarding the defendant's prior misconduct. During the discussion of the limitations on the use of that testimony, held outside the presence of the jury, there again was no mention of whether the conviction itself would be

admissible. The trial court never ruled on this issue and the defendant ultimately did not testify.

During the trial, the defendant never raised this claim of delay or refusal by the trial court to address the use of his record for impeachment purposes. Although on March 20, 1991, the defendant indicated that his present intention was to testify, at no time during the trial did he object to the court's continued reservation of its decision regarding the state's ability to use his prior conviction for purposes of impeachment. The record thereafter is silent with respect to that issue and the defendant's decision not to testify.

By failing to seek a ruling, the defendant acquiesced in the trial court's deferral and ultimate abstinence. To take that position at trial and to assert now a lack of a timely ruling for the first time on appeal amounts to trial by ambuscade of the trial judge. *State* v. *Brice,* 186 Conn. 449, 457, 442 A.2d 906 (1982). Where the claimed error is first raised on appeal, and is not of constitutional dimension, this court will not review it.[5] *State* v. *Golding,* 213 Conn. 233, 240–41, 567 A.2d 823 (1989). Although the defendant did file and argue a motion in limine, he allowed the trial to proceed without any objection to the lack of a ruling. The claim of error now asserted relates solely to this lack of a timely ruling and is therefore predicated on a matter never called to the attention of the trial court. Accordingly, we decline to review the defendant's claim.

### III

In his third issue on appeal, the defendant challenges the state's introduction of testimony by Nikola, which he claims constituted expert opinion regarding an ultimate issue. Following Nikola's testimony that the

---

[5] No claim for review of the issue as one of constitutional dimension has ever been made.

thirty-one vials discarded by the defendant were a "common form for packaging crack or cocaine" and that each one had a street value of $5, Nikola was asked whether it was unusual to find a person who is a narcotics user in possession of thirty-one vials of crack cocaine at a time. He responded: "Yes. There are—these are more likely to be held by someone that's selling the product as opposed to someone that's using them. They wouldn't have—a user wouldn't have reason to have this many."

The defendant objected to Nikola's testimony on the grounds that the evidence was cumulative of other testimony on the common methods of packaging narcotics, and further, that he did not have sufficient notice that Nikola would be called as a witness. These are not his claims on appeal. Before this court, the defendant tries to distinguish his case from *State* v. *Vilalastra,* 207 Conn. 35, 540 A.2d 42 (1988), and *State* v. *Williams,* 169 Conn. 322, 333–34, 363 A.2d 72 (1975),[6] by arguing that, despite our earlier pronouncement, the testimony here did amount to an opinion on the ultimate issue and that such testimony violates General Statutes § 54-86i.[7]

When objecting to evidence, it is the obligation of counsel to state succinctly the basis of the objection.

---

[6] In *State* v. *Vilalastra,* 207 Conn. 35, 540 A.2d 42 (1988), and *State* v. *Williams,* 169 Conn. 322, 333–34, 363 A.2d 72 (1975), we concluded that law enforcement personnel, testifying as experts, may properly give an opinion concerning "the quantity of narcotics which a dealer might possess or the manner in which a drug might be transported by a dealer." (Internal quotation marks omitted.) *State* v. *Vilalastra,* supra, 42.

[7] General Statutes § 54-86i provides: "TESTIMONY OF EXPERT WITNESS RE MENTAL STATE OR CONDITION OF DEFENDANT. No expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto, except that such expert witness may state his diagnosis of the mental state or condition of the defendant. The ultimate issue as to whether the defendant was criminally responsible for the crime charged is a matter for the trier of fact alone."

*State* v. *Manning,* 162 Conn. 112, 118, 291 A.2d 750 (1971). The purpose of this rule, as stated in Practice Book § 288,[8] is to inform the trial court of "the precise nature of the objection and its real purpose, in order to form an adequate basis for a reviewable ruling." *State* v. *Braman,* 191 Conn. 670, 684, 469 A.2d 760 (1983). In addition, Practice Book § 4185[9] requires that appealable claims of error be distinctly raised at trial. *State* v. *Weidenhof,* 205 Conn. 262, 273, 533 A.2d 545 (1987). Our review of the trial court's ruling on an objection is ordinarily limited to the grounds asserted by the party at trial. *State* v. *Braman,* supra, 684–85. We have consistently refused to consider evidentiary rulings not properly preserved. Where the issue raised for the first time on appeal is a matter of state evidentiary law, rather than of constitutional significance, this court will deny the defendant appellate review. *State* v. *Forrest,* 216 Conn. 139, 146, 578 A.2d 1066 (1990). As this court has stated before, a challenge to expert testimony is usually a matter of state evidentiary law.

[8] Practice Book § 288 provides: "Whenever an objection to the admission of evidence is made, counsel shall state the grounds upon which it is claimed or upon which objection is made, succinctly and in such form as he desires it to go upon the record, before any discussion or argument is had. Argument upon such objection shall not be made by either party unless the court requests it and, if made, must be brief and to the point. An exception to the ruling must be taken in order to make it a ground of appeal."

[9] Practice Book § 4185 provides: "The supreme court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The supreme court may in the interests of justice notice plain error not brought to the attention of the trial court.

"In jury trials, where there is a motion, argument, or offer of proof or evidence in the absence of the jury, whether during trial or before, pertaining to an issue that later arises in the presence of the jury, and counsel has fully complied with the requirements for preserving any objection or exception to the judge's adverse ruling thereon in the absence of the jury, the matter shall be deemed to be distinctly raised at the trial for purposes of this rule without a further objection or exception provided that the grounds for such objection or exception, and the ruling thereon as previously articulated, remain the same."

*State* v. *Vilalastra,* supra, 46–47. On the basis of the record below, we decline to review this claim. *State* v. *Forrest,* supra.

## IV

The defendant next claims that the introduction into evidence of toxicological reports regarding narcotics that were unavailable deprived him of a fair trial in violation of the due process clause of the fourteenth amendment to the United States constitution.[10] He argues that the state's recklessness in destroying the narcotics constitutes bad faith and that the trial court was "simply unfair" in allowing testimony as to its nature. We disagree.

"[T]he requirements of due process are met in the trial of a person accused of crime if he has been given the benefit of a fair and impartial trial in accordance with the settled course of judicial proceedings in this state. . . . (Citation omitted.) *State* v. *McIver,* 201 Conn. 559, 565, 518 A.2d 1368 (1986). Whether the defendant was deprived of a fair trial by the admission of testimony concerning the lost [evidence] depends upon the reason for the unavailability of the evidence, the materiality of the evidence, the likelihood of mistaken interpretation of it by witnesses or the jury, and the prejudice to the defendant caused by the unavailability of the evidence. *State* v. *Boucino,* 199 Conn. 207, 229, 506 A.2d 125 (1986); *State* v. *Hamele,* 188 Conn. 372, 381, 449 A.2d 1020 (1982)." (Internal quotation marks omitted.) *State* v. *Marra,* 222 Conn. 506, 516, 610 A.2d 1113 (1992). The state argues that no bad faith existed, that the evidence was not material, that there

[10] The fourteenth amendment to the United States constitution provides in pertinent part: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

was little likelihood of mistaken interpretation, and that its destruction did not cause prejudice to the defendant.[11]

As to the issue of bad faith, the defendant argues that the state's destruction of the narcotics was reckless. Bad faith, as used by this court in the numerous cases involving destroyed statements, means that the state deliberately destroyed the evidence with the intent to deprive the defense of information; that is, that the evidence was destroyed by, or at the direction of, a state agent who intended to thwart the defense. *State* v. *Williamson,* 212 Conn. 6, 15–16, 562 A.2d 470 (1989); *State* v. *Santangelo,* 205 Conn. 578, 587, 534 A.2d 1175 (1987). No such evidence was offered below. The state's witnesses explained that the evidence had been mistakenly destroyed because the criminal prosecutions against Rogers and Stratton had concluded. The trial court did not question the integrity of this explanation. The issue of motivation was determined by the trier of fact and decisions about witness credibility are within the sole province of the trier of fact. *Nor'easter Group, Inc.* v. *Colossale Concrete, Inc.,* 207 Conn. 468, 473, 542 A.2d 692 (1988). The defendant did not challenge the verity of the excuse, but questioned whether the destruction of the evidence was good police practice. Even the state has to concede that it was not. Deliberate destruction of evidence with reckless disregard for the defendant's rights, however, is not enough to establish bad faith.[12] See *State* v. *Williamson,* supra, 16.

[11] The defendant does not claim that the lost evidence was either exculpatory or even potentially exculpatory. Therefore, he is not claiming a violation of, nor is he entitled to the applicability of, the rule of *Brady* v. *Maryland,* 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963) (prosecutorial suppression of exculpatory evidence), or the rule of *Arizona* v. *Youngblood,* 488 U.S. 51, 57–58, 109 S. Ct. 333, 102 L. Ed. 2d 281 (1988) (failure to preserve potentially exculpatory evidence). See *State* v. *Cerilli,* 222 Conn. 556, 578 n.15, 610 A.2d 1130 (1992).

[12] The defendant uses the word "recklessness," as opposed to negligence, but does not develop the record with facts that support it. We do not know

In the absence of bad faith, we apply a balancing test and first evaluate whether the missing evidence was material; that is, would the outcome of the trial have been different if the evidence had been made available? *United States* v. *Bagley,* 473 U.S. 667, 681–82, 105 S. Ct. 3375, 87 L. Ed. 2d 481 (1985). "The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Id., 682. There is nothing to suggest that the test results were not accurate; nor was there any evidence of error in the state's procedures. *State* v. *Marra,* supra, 517. The defendant never requested access to the narcotics for independent testing although they were not destroyed until two months after the testing at the state laboratory. *State* v. *Harden,* 175 Conn. 315, 327, 398 A.2d 1169 (1978).[13]

There is no question that the state had to prove that the vials contained cocaine as an essential element of sale of a narcotic substance. Nor is there any question that a plea of not guilty puts every essential element of an offense in dispute. *State* v. *Johnson,* supra. In evaluating the issue of materiality, however, the theory of defense on which the case was tried does become important. The defendant argued that he did not sell any narcotics, that Rogers and Brooks did not buy any vials of narcotics from him, and that the narcotics that had been confiscated came from another source. There-

what efforts the police made or failed to make to learn about the defendant's case or its progress before destroying the evidence. The police intended to destroy the evidence, but there has been no claim or evidence to support anything beyond negligent behavior. For the purposes of this claim, however, we accept the defendant's label.

[13] This court does indeed recognize the independent responsibility of the state to preserve this evidence and to make it available upon request. Reference to the lack of such request by the defendant pertains only to the issue of materiality and whether the defendant deemed it significant, and does not suggest an excuse for the state's noncompliance.

fore, there is no indication that had he been able to test the vials, his defense would have been any different.[14]

Finally, the issue of the likelihood of misinterpretation must be weighed. Because the defendant cross-examined Milzoff regarding the testing procedures and the circumstances of the destruction of the evidence, the likelihood of misinterpretation is low. See *State* v. *Marra,* supra. Therefore, we conclude that the state's destruction of the three vials of narcotics seized from the defendant's customers did not deprive the defendant of his right to due process.

## V

In the fifth issue raised on appeal, the defendant contends that the trial court incorrectly admitted all thirty-one vials into evidence when only nine had been tested and found to contain cocaine. At trial, the defendant objected to the state's introduction of all thirty-one vials, claiming that the state had not demonstrated a sufficient chain of custody. That objection was overruled. Milzoff then testified that the nine vials tested were found to have contained crack cocaine. The state asked whether he had an opinion regarding the contents of the remaining vials, but the defendant again objected and that objection was sustained. Thereafter on cross-examination, Milzoff reiterated that only nine vials had been tested; he believed, however, that this was an excellent sampling and that all the vials probably contained cocaine, although he had "no chemical analysis to verify that statement."

[14] Had the defendant been able to test the vials and had the results by a second expert been different, the defendant could have presented two alternate theories of defense and the contradicting results would have gone to the weight accorded Milzoff's testimony. *State* v. *Harris,* 189 Conn. 268, 273, 455 A.2d 342 (1983). There is nothing to suggest, however, based upon a review of the cross-examination of Milzoff regarding the testing procedures, that this scenario is anything more than speculative.

On appeal, the defendant raises for the first time his theory that the trial court incorrectly admitted into evidence these "numerous vials of untested, suspected narcotics." This issue was not raised below. Once again, neither the state nor the trial court were apprised of this ground of objection. See Practice Book § 288. Nor does the defendant assert any constitutional violations that would warrant review under *State* v. *Golding,* supra, 239–40. Therefore, this evidentiary claim does not merit review.[15] Practice Book § 4185.

## VI

The defendant next contends that there was insufficient evidence of the element of intent[16] required to convict the defendant of possession with the intent to sell. The defendant makes two points, neither of which address the issue of intent: (1) that Brooks, Rogers, Stratton and Wheeler all exonerated the defendant; and (2) that the police officers' testimony was inconsistent as to the defendant's age and clothing. Neither of these advances the defendant's cause. The jury was free to reject the testimony of the defense witnesses and this court cannot retry the case or pass on their credibility. See *State* v. *Crump,* 201 Conn. 489, 491, 518 A.2d

[15] Although the admissibility of evidence is normally a matter of state law, where it results in a denial of fundamental fairness or the denial of a specific constitutional right, review is appropriate. No such claim here exists. See *State* v. *Smith,* 209 Conn. 423, 426, 551 A.2d 742 (1988).

[16] In connection with this issue, the defendant alluded to other arguments "regarding the claims of error surrounding the element of intent," and states that these arguments will not be repeated. This court can only assume that he is referring to his claim that the trial court erred in allowing into evidence testimony of prior misconduct, which we have said was more probative of his state of mind than it was prejudicial. If he is also referring to Nikola's testimony that thirty-one vials of crack cocaine would more likely be held by an individual for purposes of sale rather than for personal use, as stated earlier, this testimony was not challenged as expert opinion. Moreover, there is nothing to distinguish Nikola's testimony from that approved in *State* v. *Vilalastra,* 207 Conn. 35, 540 A.2d 42 (1988), and *State* v. *Williams,* 169 Conn. 322, 363 A.2d 72 (1975).

378 (1986), and cases cited therein. It is not our function to determine if the jury was correct in its evaluation of the credibility of these various witnesses. *State v. Robinson,* 213 Conn. 243, 256, 567 A.2d 1173 (1989). The issue is whether there was sufficient evidence before the jury from which it could reasonably infer intent. We conclude that there was.

This court's role in evaluating the sufficiency of the evidence in a jury trial is well established. "We first construe the evidence presented at trial in a light most favorable to sustaining the verdict, and then determine whether the jury could reasonably have found upon the facts established and the inferences reasonably drawn therefrom, that a cumulative effect of the evidence established guilt beyond a reasonable doubt. . . ." (Citations omitted; internal quotation marks omitted.) *State v. Hahn,* 207 Conn. 555, 560, 541 A.2d 499 (1988). " ' "In this process of review, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct." *State v. Sinclair,* 197 Conn. 574, 576, 500 A.2d 539 (1985), and cases there cited.' *State v. Rollinson,* [203 Conn. 641, 666, 526 A.2d 1283 (1987)]." *State v. Carpenter,* 214 Conn. 77, 79, 570 A.2d 203 (1990). So far as probative force is concerned, there is no legal distinction between circumstantial and direct evidence. *State v. Gaynor,* 182 Conn. 501, 506 n.3, 438 A.2d 749 (1980).

"Intent may be, and usually is, inferred from conduct." *State v. Cofone,* 164 Conn. 162, 164, 319 A.2d 381 (1972). "The use of inferences based on circumstantial evidence is necessary because direct evidence of the accused's state of mind is rarely available. *State v. Rodriguez,* 180 Conn. 382, 404, 429 A.2d 919 (1980)." *State v. Martin,* 195 Conn. 166, 170, 487 A.2d 177 (1985). The evidence from which the jury could reasonably infer intent to sell the crack cocaine includes the

defendant's behavior prior to the chase by the police, in particular, the exchange of money and small items between the defendant and the retrieval of narcotics from Stratton, the passenger in Brooks' vehicle; the exchange of money and several small items between the defendant and Rogers; the retrieval of narcotics that Rogers had thrown from his car during a chase by police; the amount of cocaine and cash the defendant possessed;[17] the manner in which the cocaine was packaged; and the defendant's prior misconduct. "The intent of the actor is a question for the trier of fact, and the conclusion drawn by the trier in this regard should stand unless it is an unreasonable one." *State* v. *Holley,* 174 Conn. 22, 26, 381 A.2d 539 (1977). In the present case, the jury's determination that the defendant possessed the cocaine with the intent to sell was a reasonable conclusion, perfectly consistent with and corroborated by its verdicts of guilty on the two counts of sale of a narcotic substance.

## VII

The defendant's seventh claim pertains to an unfortunate statement made in the trial court's introductory remarks to the jury array prior to commencement of voir dire. The defendant claims that the statement deprived him of his right to a fair trial.[18] No objection

---

[17] The defendant conceded in connection with his first argument that "there was more than ample evidence from which to infer intent . . . ." See part I of this opinion.

[18] The trial court discussed some general principles of law in relation to criminal cases, including, but not limited to the presumption of innocence and burden of proof. As part of its introduction, the court made the following statement: "I'm sure [the previous judge] stressed the point of one day, one trial. So, most people think they go to jury duty for one day. That we can get rid of business in one day. We're not that fortunate. *We don't have a totalitarian system that can try you and fry you in the same day as somebody once said.* It takes time. It takes time to pick a jury. It takes time to present evidence. It takes time to produce evidence on behalf of the defendant if he wishes to do so." (Emphasis added.)

was raised in the trial court to the remarks the defendant now claims denied him a fair trial. While we deplore such comment and caution strongly against it, the record is insufficient for this court to be able to ascertain whether the remarks prejudiced the defendant. In order to prevail on a claim of constitutional error not preserved at trial, the defendant must provide an adequate record to review the alleged claim of error. *State* v. *Stanley,* 223 Conn. 674, 688–89, 613 A.2d 788 (1992); *State* v. *Golding,* supra, 239–40. "It is the appellant's responsibility to provide this court with a record adequate to review his claim of error. *State* v. *Anderson,* 209 Conn. 622, 633, 553 A.2d 589 (1989); *State* v. *Crumpton,* 202 Conn. 224, 231, 520 A.2d 226 (1987). This the defendant has failed to do." *State* v. *Carpenter,* supra, 86.

In the trial court, the defendant failed to indicate whether any of the prospective jurors who heard the court's statement were ultimately selected to sit as a juror on his case. Consequently, because there is no basis upon which we can evaluate and determine prejudice, the defendant cannot prevail on this claim. *State* v. *Golding,* supra.

## VIII

In his final claim, the defendant asks this court to review his sentence. The trial court sentenced the defendant to a term of imprisonment of seven years on each of the two sale counts and to a term of imprisonment of thirty years on the charge of possession with the intent to sell as a subsequent offender, all sentences to run consecutively for a total effective sentence of forty-four years. The defendant now claims that his sentence, which was within the statutory limits of § 21a-277 (a), was excessive and "inappropriate."

It is well established that when the sentence imposed is within the limits fixed by statute for the offenses charged, an appellate claim that the sentence is exces-

sive is nothing more than an appeal for clemency and a request that this court exercise discretionary authority it does not possess. *State* v. *Nardini,* 187 Conn. 109, 127, 445 A.2d 304 (1982). In *State* v. *Rose,* 168 Conn. 623, 638, 362 A.2d 813 (1975), we stated that we have no discretionary power to modify or overturn a sentence that was within the limits fixed by statute for the offense charged, except where a trial court appears to have abused its discretion. See also *State* v. *LaPorta,* 140 Conn. 610, 612, 102 A.2d 885 (1954); *State* v. *Van Allen,* 140 Conn. 39, 44, 97 A.2d 890 (1953); *State* v. *Horton,* 132 Conn. 276, 278, 43 A.2d 744 (1945); *State* v. *Chuchelow,* 128 Conn. 323, 324, 22 A.2d 780 (1941). Abuse of discretion, however, means more than that the defendant's sentence was too severe. See *State* v. *Horton,* supra, and cases cited therein. Where the trial court has properly considered all of the offenses proved and imposed a sentence within the applicable statutory limitations, there is no abuse of discretion. *State* v. *LaPorta,* supra. A petition for sentence review, which is pending, is the appropriate vehicle by which to have this claim evaluated. See General Statutes § 51-195 et seq.[19]

---

[19] "[General Statutes] Sec. 51-195. APPLICATION FOR REVIEW OF SENTENCE. Any person sentenced on one or more counts of an information to a term of imprisonment for which the total sentence of all such counts amounts to confinement for three years or more, may, within thirty days from the date such sentence was imposed or if the offender received a suspended sentence with a maximum confinement of three years or more, within thirty days of revocation of such suspended sentence, except in any case in which a different sentence could not have been imposed or in any case in which the sentence or commitment imposed resulted from the court's acceptance of a plea agreement or in any case in which the sentence imposed was for a lesser term than was proposed in a plea agreement, file with the clerk of the court for the judicial district in which the judgment was rendered an application for review of the sentence by the review division. Upon imposition of sentence or at the time of revocation of such suspended sentence, the clerk shall give written notice to the person sentenced of his right to make such a request. Such notice shall include a statement that review of the sentence may result in decrease or increase of the term within the limits fixed by law. A form for making such application shall accompany

The judgment is affirmed.

In this opinion the other justices concurred.

the notice. The clerk shall forthwith transmit such application to the review division and shall notify the judge who imposed the sentence. Such judge may transmit to the review division a statement of his reasons for imposing the sentence, and shall transmit such a statement within seven days if requested to do so by the review division. The filing of an application for review shall not stay the execution of the sentence."