[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is a habeas petition initially filed on February 3, 1993. The petitioner subsequently filed an amended petition dated October 18, 1995 through counsel. Additionally, during pre-trial proceedings, the court entitled the petitioner to file a pro se
petition as a supplement to his counsel's, and by pleading dated September 5, 1996, the petitioner filed further claims to be added to the October 18, 1996 amended petition.
The petitioner's claims are set forth in three counts. In Count One the petitioner alleges that his present incarceration is illegal on the basis that he was denied the effective assistance of counsel in the underlying criminal trial. Count Two sets forth a claim that the petitioner was denied the effective assistance of appellate counsel. In Count Three, the petitioner claims that he should not have been sentenced as a subsequent offender in this matter because he had plead guilty on February 27, 1990 in an unrelated drug case under circumstances in which he understood that the 1990 conviction could not be used against CT Page 5295 him to enhance his sentence in any subsequent convictions.
The petitioner's pro se pleading of September 5, 1996 contains more allegations relating to the performance of trial counsel. As such, this pleading is viewed as supplemental to the claims set forth in Count One of the October 18, 1995 amended petition.
Based on the evidence adduced at the habeas hearing, the court makes the following findings and order.
The petitioner was the defendant in the criminal case entitled State vs. Baldwin, NO. CR 2-57722 in the Superior Court, Judicial District of Fairfield, Geographic Area 2 at Bridgeport.
At trial, the petitioner was represented by Special Public Defender vincent Noce. The state was represented by Assistant state's Attorney Richard Palombo. Judge William J. McGrath presided.
On April 1, 1991, following a jury trial, the petitioner was convicted of two counts of Sale of a Hallucinogenic/Narcotic in violation of Connecticut General statutes § 21a-277(a), and one, count of Possession of a Hallucinogenic/Narcotic with Intent to Sell in violation of C.G.S. § 21a-277(a). The petitioner was advised prior to the guilty verdict on the three count Information that, if convicted, he would also be charged with being a Subsequent Offender on the basis of a February 27, 1990 conviction for possession of a narcotic with intent to sell. Once the jury returned a guilty verdict on the three count Information, the petitioner pleaded not guilty to the second part of the Information. On April 2, 1991, following a hearing before the trial jury, the petitioner was found guilty of being a Subsequent offender.
On May 2, 1991 the petitioner was sentenced to a term of thirty years incarceration on the Possession with Intent to Sell conviction as a Subsequent Offender, and seven years on each Sale conviction, consecutive to one another and to the thirty year sentence, for a total effective sentence of forty four years incarceration. This sentence was subsequently reviewed and reduced by the Sentence Review Division to a total effective sentence of thirty years.
The petitioner is presently an inmate in the custody of the CT Page 5296 Commissioner of Corrections.
The petitioner's conviction was affirmed on direct appeal.State v. Baldwin, 224 Conn. 347 (1993).
While a detailed recitation of the underlying facts is set forth in the Supreme Court opinion, some discussion of the facts is necessary for the court's analysis of the petitioner's claims.
At trial, the state adduced evidence that on November 1, 1991, the Connecticut state Police and the Bridgeport Police Department were conducting a joint surveillance on Building 23 at the Father Panik Village, a housing development in Bridgeport. Officers at the trial testified that the surveillance area was known for its heavy drug activity. The surveillance officers observed a blue Hyundai motor vehicle stop by the building, and its driver, Thomas Brooks, alight from the vehicle to speak with Mark Wheeler. Both men then approached the petitioner who had been standing in the Building 23 hallway. Brooks handed the petitioner some paper money in exchange for several small items.
The surveillance team then radioed a description of Brooks and his vehicle to other team members situated in unmarked police cars. A few moments later, the Hyundai was stopped. While Brooks was not found in possession of any narcotics, his front right seat passenger, Barbara stratton, was holding two plastic vials with green caps in her fists. Subsequent tests determined that the vials contained crack cocaine.
Approximately forty five minutes later, the building surveillance team observed a blue Chevrolet driven by Sylvester Rogers enter the courtyard of Building 23. Rogers got out of his vehicle and spoke with Wheeler. Both men then walked over to Building 23 where they spoke with the petitioner and handed him paper money in exchange for several small items. The surveillance team then radioed to team members in unmarked cars, giving them a description of the Chevrolet and Rogers. Following a short vehicular chase, Rogers was apprehended. During the chase, one of the pursuing officers saw Rogers throw several objects out the driver's side window. While one officer arrested Rogers, another ran back to the area where Rogers had thrown objects from the car. Though there was a crowd forming in the area, and some people were picking up objects from the ground, the officer was able to recover one plastic vial with a green cap. Subsequent examination revealed that the vial contained crack cocaine. CT Page 5297
Approximately 45 minutes later, Wheeler and the petitioner were seen in the doorway of building 23 by the surveillance team. Baldwin was seen to hand Wheeler some paper money in exchange for a plastic bag. Following a radio call to other members of the surveillance team, a short foot chase took place during which one of the officers in pursuit saw the petitioner reach into his jacket pocket and throw a clear plastic baggie into an open, abandoned apartment. The baggie was subsequently seized and found to contain thirty-one plastic vials, of the thirty-one vials, nine were laboratory tested and found to contain crack cocaine. The testing toxicologist testified that the nine tested vials had been selected at random, and that the remaining vials were not tested based on the laboratory's desire to provide timely reporting of its findings.
During a search of the petitioner following his apprehension and arrest, officers found one hundred fifty eight ($158) dollars in his shoe and in his pants pocket. Wheeler was found in possession of seven hundred five ($705) dollars, but no narcotics.
In order for the petitioner to succeed in his claim that he was denied the effective assistance of counsel in the criminal proceedings, he has the burden of proving both that his trial counsel's performance was deficient and that he was actually prejudiced by his counsel's deficient performance. Strickland v.Washington, 466 U.S. 668 (1984), Bunkley v. Commissioner,222 Conn. 444 (1992), Copas v. Commissioner, 234 Conn. 139 (1995).
The petitioner's right to the effective assistance of counsel is assured by the sixth and fourteenth amendments to the Federal constitution and by Article First, Section 8 of the Connecticut constitution. In order to prove that his counsel's performance was deficient, the petitioner must demonstrate that trial counsel's representation fell below an objective standard of reasonableness. Aillon v. Meachum, 211 Conn. 352 (1989). Competent representation is not to be equated with perfection. "The constitution guarantees only a fair trial and a competent attorney; it does not ensure that every conceivable constitutional claim will be recognized and raised." Jeffrey v.Commissioner, 36 Conn. App. 216 (1994) (citations omitted). "Defense counsel's performance must be reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law. (citations omitted; CT Page 5298 internal quotations marks omitted.) Johnson v. Commissioner,36 Conn. App. 695 (1995).
The Strickland court also gave guidance to the trial bench for its assessment of ineffective claims. The Supreme Court opined: "Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . .A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within, the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action' might be considered sound trial strategy' . . . [C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." (citations omitted.) Strickland v.Washington, supra, 466 U.S. 689-90; Quintana v. Warden, 220 Conn. (1991); Williams v. Warden, 217 Conn. 419 (1991); Jeffrey v.Commissioner, 36 Conn. App. 216 (1994).
With respect to the prejudice component of the Strickland
test, the petitioner must demonstrate that, ". . . counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland v.Washington, supra 466 U.S. 687. Thus, "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Id., 691. "It is not enough for the [petitioner] to show that the errors had some conceivable effect on the outcome of the proceedings." Id., 693. Rather, a successful petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Copas v.Commissioner, 234 Conn. 139 (1995). "A reasonable probability is a probability sufficient to undermine confidence in the outcome."Strickland v. Washington, supra 466 U.S. 694."`When a [petitioner] challenges a conviction, the, question is whether CT Page 5299 there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.'"Fair v. Warden, 211 Conn. 398, 408 (1989); Jeffrey v.Commissioner, 36 Conn. App. 216 (1994).
The petitioner's first claim of ineffective assistance relates to a statement made by the court to a panel of prospective jurors when the case was first introduced to them. The petitioner claims that counsel should have objected to the court's statement, and that counsel should have taken steps to ensure that none of the prospective jurors who were present when the statement was made could be selected for his jury.
The trial transcript reflects that on March 20, 1991, the initial day of jury selection, Judge McGrath stated the following to the jury panel in referring to earlier comments of a judge who had welcomed them to the court house earlier in the day:
 "I'm sure he stressed the point of one day, one trial. So, most people think they go to jury duty for one day. That we can get rid of business in one day. We're not that fortunate. We don't have a totalitarian system that can try you and fry you in the same day as somebody once said. It takes time. It takes time to pick a jury. It takes time to present evidence. It takes time to produce evidence on behalf of the defendant if he wishes to do so. Petitioner's Exhibit A, Trial Transcript, 27, March 20, 1991.
On direct appeal, the petitioner claimed that these comments denied him a fair trial. The Supreme Court stated, "While we deplore such comment and caution strongly against it, the record is insufficient for this court to be able to ascertain whether the remarks prejudiced the defendant. In order to prevail on a claim of constitutional error not preserved at trial, the defendant must provide an adequate record to review the alleged claim of error' State v. Baldwin, supra, 224 Conn. 370.
The court further stated, "In the trial court, the defendant failed to indicate whether any of the prospective jurors who heard the court's statement were ultimately selected to sit as a juror on his case. Consequently, because there is no basis upon which we can evaluate and determine prejudice, the defendant cannot prevail on this claim." Id.
CT Page 5300
In framing this claim in his amended petition, the petitioner asserts that the prospective jurors to whom Judge McGrath spoke on March 20, 1991 constituted the only jury panel from which his jury was selected. In this assertion he is wrong. The transcript reflects that on March 20, 1991, ten prospective jurors were administered the voir dire oath. These individuals were present during the subject remark. While the record does not indicate whether any of these ten were selected as jury members, it is clear from a reading of the next day's transcript that another group of prospective jurors was empaneled and administered the voir dire oath. cf. Petitioner's Exhibit B, Trial Transcript, 2, March 21, 1991.
During the habeas hearing, the petitioner testified to his belief that most of the jurors who were selected for his trial came from the March 20, 1991 panel. Thus, he claims, jurors who actually determined his case heard the court's comments. Other than the petitioner's recollection, he adduced no documentary evidence to substantiate this claim.
Attorney Noce, who testified at the habeas hearing, did not recall the remark; nor could he recall whether jurors were selected from the March 20, 1991 panel.
Attorney Noce testified that, from this and previous, experiences with Judge McGrath, he was aware that Judge McGrath conducted court with an air of jocularity. He did not recall any instances, however, in which he felt that the court's comments were either prejudicial or demeaning to a litigant.
A review of the trial transcript supports both statements. It is clear that as a matter of style, Judge McGrath presided in a relaxed, and, at times, jocular manner. There is no occasion, however, in which Judge McGrath's comments could be viewed as either prejudicial or demeaning to the petitioner. To the contrary, it is apparent that Judge McGrath presided with an even hand and with fairness.
On the precise issue of prejudice, the court believes that Judge McGrath's comments can not reasonably be assessed in isolation but must be weighed in the context of the entire proceedings. In this regard, the court notes that immediately following the subject comments, Judge McGrath stated:
"Now, because this is a criminal case, we have CT Page 5301 certain items which must be discussed, and the first item is the presumption of innocence. I'm sure Judge Maiocco mentioned that to you this morning. That in every criminal case, the defendant is presumed to be innocent.
 What does it mean? If I asked you now what it means as he sits here now, the defendant is presumed to be innocent. And the reason why he is presumed to be innocent is because the state has not produced any evidence against him. And that is what presumption of Innocence is.
 It means that as long as he sits here, and until the case goes to the jury, and the jury after deliberating the evidence that has been produced against him comes to the conclusion that he is guilty of the charges as brought forth by the state, he's presumed to be innocent.
 Now, the presumption of innocence is not evidence. All it means, and all it does is make the state go forward and produce evidence against the defendant. Because if I were to say to you right now as a jury you've now been impaneled as a jury, we're going to do it very fast, is he guilty or not guilty of the charge? You would obviously have to say not guilty, because no one has produced any evidence against him. And the presumption of innocence applies, and has not been rebutted. Petitioner's Exhibit A, Trial Transcript, pp. 29-30, March 20, 1991.
Additionally, at the commencement of his charge to the jury at the conclusion of the evidence, the court made the following preliminary remarks:
 "I am fully cognizant that this system could be more efficient. However, the system was not designed to be efficient, but fair. And I am sure that in this, you will agree that we would not want it any other way." Petitioner's Exhibit F, Trial Transcript, pp. 77-78, April 1, 1991.
When the comment was made to the jury panel on March 20, 1991, counsel had the Hobson's choice of either objecting to the comment, asking that the panel be excused, or remaining silent. He took no action. CT Page 5302
The court does not find fault with the failure of counsel to object to the court's comments, and to risk reproach in the presence of the panel. Such a response would not have aided the petitioner.
Counsel's second choice was to ask that this initial panel,en toto, be excused. While the record does not disclose the number from this panel, if any, who were excused peremptorily, it is clear that this first panel consisted of ten individuals. The transcript reflects that, following argument on preliminary matters, the court stated, "All right. Bring out the ten volunteers." Petitioner's Exhibit A, pp. 26-27. The transcript then states, "(Whereupon the jury panel was summoned, roll was taken, and the voir dire oath administered.)" Id. While the court recognizes that the petitioner should not have been required to exercise his statutory peremptory challenges to rid the pool of a prejudicial taint, his assertion that most of the jury was, in fact, selected from this panel, detracts from the reliability of his claim that he perceived prejudice in Judge McGrath's comments.
In selecting trial jurors, counsel must be sensitive to many factors relating to the prospective jurors' characteristics and predilections. Without a fuller record of the assessment made by counsel relating to the jurors themselves, apart from any impact the court's comment might have made, the court is unable to state that counsel should have sought to excuse the entire panel. The petitioner, therefore, has failed to sustain his burden that, counsel should have either objected to the court's comment, or moved to excuse the panel.
Finally, having reviewed the entire transcript, with particular attention to the comments immediately following the subject comments and the court's preliminary jury instructions, the court finds that there is no basis for concluding that the petitioner was prejudiced by the comments in question.
The petitioner claims that counsel failed to preserve for appellate review a comment purportedly made by the court during the individual voir dire process. The petitioner, who is Afro-American, claims that shortly after an Afro-American male member of the jury panel had been excused from service on the basis that it would be an unreasonable hardship for him to be absent from his employment, the court stated words to the effect, that, "At CT Page 5303 least one of them has a job (sic)." The petitioner claims that, to the extent the comment could be taken as a comment on the juror's race, preservation of a record of the remark would have been helpful in establishing that the trial was conducted in an atmosphere hostile, to the petitioner.
It appears from the absence of a transcript that voir dire was not transcribed. The court views this allegation as both serious and troublesome, one to be carefully weighed and not lightly regarded.[1] In making this allegation, the petitioner has the burden of proof. Attorney Noce testified that he had no recollection of such a comment being made. The court believes that if such a comment were made by the court and heard by counsel, it would be memorable. The court notes also Attorney Noce's comments that Judge McGrath was known in the Judicial District as a fair-minded and evenhanded judge.
Most importantly, the court, having read the entire trial transcript, finds it devoid of any derogatory or demeaning comments by the court. There is nothing in the transcript to suggest that the court did not accord the petitioner respect and courtesy throughout the proceedings. The petitioner has failed to sustain his burden that the court made the alleged comment.
The petitioner claims that counsel failed to adequately object to admission of evidence of prior bad acts as proof of intent. During the trial, Detective Nick Nikola of the Bridgeport Police Department testified that on April 13, 1989, while conducting surveillance at the Father Panik village, he observed a black male wearing a red sweatshirt running to cars as they slowed down, and then having a brief exchange with the cars' drivers. The purport of this evidence was that the petitioner had engaged in the prior bad act of selling drugs. This evidence was admitted as part of the state's proof on the issue of intent. As noted by the Supreme Court in the direct appeal, ". . . evidence that the defendant had been a seller of narcotics in the past is relevant to `the nature of his possession of the drug at the time of the alleged offense.'" State v. Baldwin, supra, 224 Conn. 355.
The record discloses that on March 20, 1991, the first day of jury selection, Attorney Palombo notified the court and defense counsel of his intention to introduce evidence of prior misconduct relating to the petitioner's 1989 arrest for selling drugs in Father Panik village. While Attorney Noce commented that such, evidence would be highly prejudicial, the court noted CT Page 5304 that it would take argument at the time the offer was made during trial. Subsequently, on March 27, 1991, when Detective Nikola was called to testify, Attorney Noce objected at the point that Nikola was about to state the name of the individual he had observed selling drugs at Father Panik Village on April 13, 1989. Once the jury was excused, counsel and the court engaged in a lengthy colloquy following which the court determined that the proffered testimony of prior misconduct would be admitted. Attorney Noce's arguments were cogent, if not successful. He stated his objections, and he preserved the record. His conduct in this regard was well with reasonable parameters for the conduct of the defense.
The petitioner claims that counsel failed adequately to object to Nikola's opinion testimony based on his police experience that thirty-one vials of crack cocaine would more likely be possessed by a seller than by someone who is using them, and that a user would not have reason to hold this many. This issue arose during the colloquy out of the jury's presence at the commencement of Nikola's testimony. During the discussion, the state noted decisional law permitting such testimony, and the court ruled it admissible. Attorney Noce objected to this testimony on the basis that the state had not notified him, as required by rule, of its intention to introduce this opinion evidence, and also on the grounds that the evidence was cumulative. The petitioner now claims that Attorney Noce failed to object on the grounds that Nikola should not have been allowed to state an opinion as to an ultimate fact.
While the petitioner is correct in his claim that Attorney Noce did not object on the grounds he now states, it is the court's view that such an objection would not have prevailed. Thus, the petitioner was not prejudiced by counsel's failure to object on this basis.
C.G.S. § 54-86i states, in pertinent part, that "No expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged. . ." In State v. Vilalastra, 207 Conn. 35 (1988), the Supreme Court held that it was not improper for the trial court to permit a police officer to state an opinion that drugs he had seized had been held by the defendant for sale and not for his personal use. While Vilalastra was decided prior to the enactment CT Page 5305 of C.G.S. § 54-86i, its language, as well as subsequent decisional law, supports a view that the evidence was properly admitted. In Vilalastra, the court stated that the state may not ask an expert witness whether in his expert opinion a defendant possessed illegal drugs for sale or consumption. Id., 45. This holding, while presaging the legislative prohibition, did not make erroneous the opinion testimony given in the Vilalastra
trial. Nor would it make Nikola's testimony inadmissible in this case. Nikola was not asked to state his opinion as to whether the defendant held the drugs for sale purposes. Rather, he was allowed to state that, based on his experience, a person in possession of thirty-one vials of crack cocaine is not likely to be holding them for person use, and is more likely to be holding them for sale.
The Appellate Court in State v. Smith, 35 Conn. App. 51
(1994), stated, "`An expert witness ordinarily may not express an opinion on an ultimate issue of fact, which must be decided by the trier or fact." (citations omitted) An expert may, however, `give an opinion on an ultimate issue where the trier, in order to make intelligent findings, needs expert assistance on the precise question on which it must pass. . .' (citations omitted)" Similarly, the Supreme Court in State v. Walton, 227 Conn. 32
(1993), stated, "We hold, however, that the state may not ask an expert witness whether in his expert opinion a defendant possessed illegal drugs for sale or consumption. We note that it would have been entirely proper for the state's attorney to have asked [the detective] whether in his expert opinion drug sellers usually work with the items found and seized in the defendant's apartment, or whether it would be unusual to discover these items in the apartment of someone who did not sell drugs. (citations omitted) "
Finally, as to this point, even if it could be argued that the court erroneously admitted Nikola's opinion testimony, and it was not reviewed on appeal because counsel failed to make a sufficiently specific objection, the admission was not so prejudicial so as to put into doubt the fairness of the jury verdict.
In order to assess the prejudicial impact of this evidence, reference must be made to the balance of the evidence against the petitioner. It was overwhelming. In addition to the observations of the surveillance team and the toxicological testing of the cocaine, the state was able to adduce evidence that occupants of CT Page 5306 both the Hundai and the blue Chevrolet were in possession of cocaine at the time of their arrests or during their attempted flight from arrest. Additionally, while the charges against the Hundai driver, Brooks, were nolled, his passenger, stratton, when called as a defense witness, acknowledged that she was in possession of cocaine when arrested. Wheeler, too, was called as a defense witness, and he admitted that he was arrested with the petitioner, and that he later pleaded guilty to Conspiracy to Sell Cocaine arising out of his involvement with the petitioner on the day of his arrest. While both he and Sratton denied that their criminal activities involved the petitioner, the persuasive impact of their evidence was their criminal involvement at the place and on the date of the petitioner's arrest. Against these circumstances, their attempts to exculpate Baldwin were not believable. Similarly, the petitioner called Sylvester Rogers, the Chevrolet driver, to testify. Though he denied that he had thrown any narcotics from his car window during the car chase, he acknowledged that he subsequently pleaded guilty to the charge of possession arising from his involvement on the date and in the place of the petitioner's criminal activity.
The petitioner claims that counsel did not adequately object to the court's refusal to rule on his motion in limine prior to the commencement of trial. A review of the trial transcript indicates that on the first day of jury selection, counsel filed a motion seeking a ruling on the question of whether the state would be allowed to prove the petitioner's past criminal record should he testify. The court declined to rule at that time. The petitioner now claims that he was prejudiced by the court's unwillingness to rule. He claims that he was not able to make an informed choice as to whether or not to testify on his own behalf. The petitioner did not testify.
The record does not support the petitioner's contention. When this issue was raised before the commencement of the trial, Attorney Palombo stated that, if the petitioner testified, he intended to cross examine him on the basis of a conviction for an unnamed felony. He repeated this statement twice. It is thus quite clear from the record that, notwithstanding the court's refusal to make a preliminary ruling, the petitioner was on notice of the State's intentions, should he choose to testify.
While it is unclear whether the petitioner decided not to testify because he did not want his prior felony conviction made known to the jury, of whether he was buoyed by the testimony of CT Page 5307 defense witnesses, the court is unpersuaded that his decision not to testify had any relation to the absence of a pre-trial ruling in this regard.
The petitioner claims that trial counsel failed adequately to argue for a bifurcation of his trial where he was charged as a Subsequent Offender. The petitioner argues that pursuant to the Supreme Court's decision in State v. Ferrone, 96 Conn. 160
(1921), and successor cases, the state was required to bifurcate his trial so that the jury would not hear of his prior conviction before making a determination regarding the three count Information. cf. State v. Jones, 234 Conn. 324 (1995), State v.Jenkins, 31 Conn. App. 604 (1996).
A review of the transcript reveals that the state acted in complete accord with the reasoning in Ferrone, and in full compliance with relevant sections of the Practice Book which implement the dictates of Ferrone.
Practice Book § 619 states, in pertinent part, that "Where the information alleges, in addition to the principal offense charged, a former conviction or convictions, such information shall be in two separate parts, each signed by the prosecuting authority. In the first part, the particular offense with which the accused is charged shall be set out, and in the other part the former conviction or convictions shall be alleged. . ." P.B. § 840 states, in pertinent part, "When an information is divided into two parts under Sec. 619, on a finding of guilty on the first part of the information, a plea shall be taken and, if necessary, election made on the second part and the trial thereon proceeded with. If the defendant elects a jury trial on the second part of the information, such trial may be had to the same or to another jury as the judicial authority may direct.[2]
A review of the trial transcript and pertinent documentary evidence reveals that this procedure was followed in the petitioner's trial. cf. Petitioner's Exhibit L, Second Part of Information.
The petitioner alleges that Attorney Noce failed to preserve for appellate review an evidentiary objection to the introduction of thirty-one vials of alleged cocaine, where only nine vials had been subjected to laboratory testing to determine their contents. A review of the trial transcript reveals the thirty-one vials CT Page 5308 were admitted into evidence once they were identified by the Bridgeport police officer who recovered them from a baggie thrown by the petitioner into an abandoned apartment while he was being pursued. Counsel objected to the proffer on the basis that there was an insufficient chain of custody. cf. Petitioner's Exhibit C, 99.114-115, March 26, 1991. Subsequently, on March 27, 1991, Dr. Joel Milzoff, from the Toxicology Division of the Department of Health Services, testified that nine of the thirty-one vials received by the laboratory had been tested, and tested positive for the presence of cocaine. When the state offered Dr. Milzoff's report as a business entry, Attorney Noce objected on the basis that the report listed all thirty-one vials, while there was testing of only nine. On appeal, the petitioner argued that the trial court should not have admitted all thirty-one vials into evidence since only nine had been tested. The court stated, "On appeal, the defendant raises for the first time his theory that the trial court incorrectly admitted into evidence these `numerous vials of untested, suspected narcotics.' This issue was not raised below. Once again, neither the state nor the trial court were apprised of this ground of objection. See Practice Book § 288. Nor does the defendant assert any constitutional violations that would warrant review under State v. Goldina,
supra, 239-40. Therefore, this evidentiary claim does not merit review. Practice Book § 4185." State v. Baldwin, supra,224 Conn. 367.
The admissibility of the vials, and the fact that nine of them tested positive for cocaine, was a two-step process. With respect to the testimony of the police officer who recovered the vials after they had been discarded by the petitioner, the court is aware of no applicable rule of evidence that would have made introduction of the vials themselves inadmissible. Officer Carl Berquist of the Bridgeport Police Department testified that, as he was chasing the petitioner, he saw him reach into his right jacket pocket, take his hand out, and toss a clear plastic baggie into an open and abandoned apartment. This occurred while Berquist was within two to, three feet of the petitioner. Shortly thereafter, once the petitioner was secured, Berquist retrieved the baggie, which, he stated, contained thirty-one vials with green caps. Each vial, he stated, contained white granular-like substance. Over counsel's objection, Berquist testified, based on his training and: experience, that the while granular-like substance was crack cocaine, and that crack cocaine is packaged in the way he found the vials. He also tested that he subjected one of the vials to a field test, and it produced a positive CT Page 5309 reaction for cocaine. At trial, he was able to identify the vials as having been placed into an evidence bag with his initial on it, and he presented evidence of chain of custody sufficient to overcome defense counsel's objection to it. On the basis of this record, the court is aware of no reason this evidence would have been excludable. Subsequently, through Dr. Milzoff, the state introduced a toxicology report which listed all thirty-one vials, but contained reports for only the nine vials that were subjected to testing. As to the tested vials, Dr. Milzoff testified that they contained cocaine in the freebase non-salt form, commonly known as crack cocaine. As to why all the vials were not tested, Dr. Milzoff testified that the nine were picked at random, and that all thirty-one were not tested in order to get the results back to the State's Attorney in a timely manner. Additionally, Dr. Milzoff stated that the nine tested vials indicated the presence of half a gram of cocaine freebase, and that based on such a finding, the laboratory did not feel the need to go any further.
The court is not aware of any decisional law or rule of court that would make inadmissible a laboratory report referring to thirty-one vials, which clearly states that just nine vials had been tested, and which contains the testing results for those nine.
The petitioner claims that trial counsel failed to preserve for appellate review the issue of certain exhibits which were destroyed by the police. At the trial, the state offered documentary evidence of testing done on the vials seized by the police in conjunction with the arrests of stratton and Rogers. Over defense counsel's objections, the court admitted the reports even though the vials, themselves, had been destroyed by the police once stratton's and Rogers' cases had been concluded. Notwithstanding the petitioner's claims, the trial record reveals that counsel vigorously objected to the admissibility of this documentary evidence. The court, in the absence of the jury, and following a thorough airing of the issue in light of applicable decisional law, overruled counsel's objection.
A review of the trial transcript fails to reveal any indication that the destruction was more than an inadvertence. Nor was there any evidence that the vials were destroyed in bad faith.
It is noteworthy, as well, that the Supreme Court discussed CT Page 5310 the substantive issues implicated in the admission of this evidence, and found no error. State v. Baldwin, supra,224 Conn. 363-364.
The petitioner claims that one of the reports should not have been admitted because Dr. Milzoff did not personally conduct the tests. In this assertion, the petitioner is legally incorrect. The report was admitted as a business entry. An expert's testimony may be based on reports of others if the reports are those customarily relied on by the expert in formulating an opinion. State v. Reardon, 172 Conn. 593 (1977); State v.Johnson, 26 Conn. App. 553.
In his pro se supplement to the amended petition, the petitioner claims that trial counsel failed to have the case heard by the proper judicial authority or by a judge who had been assigned by the Chief Court Administrator to handle Part A criminal matters. He also complains that the matter was heard in a G.A. court. These claims lack merit. A Superior Court judge has the authority to hear any matter properly before the Superior Court. Counsel is in no position to insist that any particular Superior Court judge preside, or not preside, over any matter properly before the Superior Court.
The court notes that the trial of this matter took place in a G.A. court. While the petitioner might understandably perceive that normally a criminal matter resulting in a sentence of forty-seven years would be tried in the Superior Court, Judicial District courthouse, there is neither rule nor statute requiring it. To the contrary, C.G.S. § 51-347b provides, in part, that "(a) Any action or the trial of any issue or issues therein may be transferred, by order of the court on its own motion or on the granting of a motion of any of the parties, or by agreement of the parties, from the superior court for one judicial district to the superior court in another court location within the same district or to a superior court location for any other judicial district. . . ". Additionally, C.G.S. § 51-348 provides, in part, that, "(c) For the prompt and proper administration of judicial business, any matter and any trial can be heard in any courthouse within a judicial district, at the discretion of the chief court administrator, if the use of such courthouse is convenient to litigants and their counsel and is a practical use of judicial personnel and facilities, except juvenile matter may be heard as provided in section 46b-122." CT Page 5311
The conduct of the petitioner's trial in the G.A. courthouse violated none of his rights.
The petitioner claims that trial counsel should have challenged the court's instructions to the jury regarding intent. Specifically, the petitioner asserts that the court's charge concerning the testimony of Detective Nikola relating to the petitioner's prior arrest had the effect of impermissibly shifting the burden of proof from the state. The court disagrees. Having reviewed Judge McGrath's charge, it's the court's view that there would have been no basis to challenge it. Indeed, Judge McGrath's charge was in the way of a limiting instruction, similar to the precautionary instruction the court had given the jury prior to Nikola's testimony. As such, it was intended to protect the petitioner's rights by limiting the import of the testimony.
The petitioner claims that trial counsel failed to object or argue at trial that Nikola's testimony as to the petitioner's arrest for sale of narcotics on a prior occasion was inadmissible under substantive law. In support of this assertion, the petitioner relies on the Supreme Court's holding in Grady v.Corbin, 495 U.S. 508 (1990). The petitioner's reliance on Grady
is misplaced. In Grady, the Supreme Court upheld the reversal of a defendant's vehicular homicide conviction on the basis that he had already pleaded guilty to initial criminal charges arising out of the same incident, and his guilty plea involved culpable acts which the state would rely upon in order to prove the homicide. Grady, which entails a double prosecution for the same behavior, is not analogous to the instant situation.
Finally, as to trial counsel, the petitioner claims that trial counsel failed to challenge the sufficiency of the evidence to prove sale of narcotics. In this assertion, the petitioner is factually incorrect. At the conclusion of the state's evidence, counsel moved for acquittal on the basis of his assertion that the state's evidence was insufficient. Counsel could only argue with the script provided to him. The vigor of his argument was appropriate to the weight of the evidence adduced against the petitioner.
In Count Two, the petitioner claims he was denied the effective assistance of appellate counsel. The petitioner was represented on appeal by Attorney Leonard Crone. CT Page 5312
The petitioner claims that Attorney Crone overlooked the issue of whether it was error for the court to permit Detective Nikola to testify about a prior bad act for the purpose of proving intent where the state had made no timely disclosure of its plan to introduce testimony regarding the bad act it presented, and had in fact misleadingly disclosed an intention to present an entirely different act. At the habeas hearing, the petitioner introduced no credible evidence in support of this claim. Indeed, a review of the transcript of March 20, 1991, the first day of jury selection, reveals that Attorney Palombo informed the petitioner and counsel of his intention to introduce evidence of the petitioner's involvement in the sale of narcotics at the Father Panik village in 1989. This is the evidence ultimately adduced at the trial. While this disclosure was on the eve of trial, the petitioner has adduced no evidence that the tardiness of the disclosure operated to his prejudice.
The petitioner claims also that appellate counsel overlooked the issue of whether the court committed error by permitting Detective Nikola to testify about a prior arrest, ostensibly for, the purpose of proving intent, where the charges resulting from that arrest were ultimately dismissed. At the habeas trial, the transcript of the petitioner's February 27, 1990 sentencing was introduced. cf. Petitioner's Exhibit I, Sentencing Transcript. On that date, the petitioner pleaded guilty to one count of a substituted Information charging him with a violation of C.G.S. § 21-277 (a), possession with intent to sell narcotics. There is no basis in fact for the petitioner's claim that the charges resulting from his 1989 arrest were dismissed.
Finally, as to appellate counsel, the petitioner claims that he overlooked the issue of whether it was error for the court to accept Detective Nikola's offer, made in the absence of the jury, to omit mention that the petitioner had been arrested, when Nikola had already testified before the jury concerning the earlier arrest. A fair reading of the transcript does not support the petitioner's contention that the court accepted the witnesses "offer". Rather, the court, after hearing argument, properly determined that evidence of the petitioner's prior misconduct could be admitted on the issue of intent as it related to the third count of the Information. Prior to Nikola's testimony before the jury, the court gave an appropriate limiting instruction.
The petitioner's final claim, set forth in Count Three of his CT Page 5313 petition, is that his guilty plea in February 27, 1990 was made, under circumstances in which he was informed that the conviction' would not later be used to enhance a sentence for any subsequent convictions. Thus, he claims, his sentence as a Subsequent Offender violates the terms of his February 27, 1990 sentence. This claim has no merit. At the February 27, 1990 sentencing, Judge Samuel Freedman, after taking the petitioner's guilty plea, but before the canvass, asked counsel, "I am assuming, gentlemen, that different or additional punishment may be authorized because of a prior conviction for this. In other words, I'm talking about sentence enhancement." Id., 14. The petitioner misreads the transcript. A fair reading of this portion reveals that Judge Freedman was asking counsel if the petitioner then had any prior drug convictions which would expose him to an enhanced penalty at that time. The transcript lends itself to no other reasonable interpretation.
For the reasons stated, the petition is dismissed.
Bishop, J.