******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

WILSON, J., concurring. I agree with the result reached by the majority in its well reasoned opinion and with its analysis of the legal issues it addressed therein. I write separately only with respect to the first claim raised by the defendant, Nathan S., that the trial court improperly admitted certain testimony from his son, U, regarding statements made to U by the defendant concerning the physical appearances of U's middle school classmates. For the reasons thoroughly discussed in the majority opinion, I agree that the defendant is unable to prevail on this claim because he has failed to satisfy his burden of proving that he was harmed by the admission of the evidence at issue.[1] I nonetheless believe that it is important to address the merits of the claim to provide necessary guidance to the lower courts in their evaluation of similar evidentiary claims.

The record reflects that, after U testified that the defendant had made comments to him about the physical appearance of middle school girls, defense counsel raised an objection, outside of the presence of the jury, on the ground that the prejudicial effect of this testimony outweighed its probative value. The prosecutor replied: "In terms of what [U] will be testifying to, it's incredibly relevant to this case . . . . It goes towards this defendant's likeness towards young girls. And, as you know, in this case we have an eleven year old victim. The state has to prove beyond a reasonable

---

[1] The defendant's claim is not constitutional in magnitude. "Whether the admission of the contested [evidence] was constitutional error or merely evidentiary error will dictate which party bears the burden of proof as to harm and the extent of that burden. . . . [I]f an [evidentiary] impropriety is of constitutional proportions, the state bears the burden of proving that the error was harmless beyond a reasonable doubt. . . . When an improper evidentiary ruling is not constitutional in nature, the defendant bears the burden of demonstrating that the error was harmful." (Citations omitted; internal quotation marks omitted.) *State* v. *Myers*, 352 Conn. 770, 779–80, 338 A.3d 1088 (2025).

doubt that this defendant touched an eleven year old girl. The statement that I will be eliciting from [U] goes towards the defendant's inclination to make comments about other middle school girls and their bodies and what they look like. It's also not uncharged misconduct because it's not a crime, what he did. But it is relevant to the jury to understand that this defendant has in the past looked at young girls and made inappropriate comments about them, likes the bodies of young girls, and that the victim here was an eleven year old girl. And this witness will also testify about the comments that his father made about the eleven year old victim in this case. So, it's incredibly relevant."

The court then asked the prosecutor to make an offer of proof. The prosecutor presented testimony from U that, when the defendant dropped him off at middle school, the defendant made comments about the physical appearance of female middle school students who were between the ages of twelve and fourteen. U testified that the defendant would make comments such as "X has a nice butt" and "Y is very pretty, that sort of thing." Later, as part of the state's offer of proof, U testified that he was between twelve and fourteen years of age when his father made the comments at issue to him. U further testified that, between August, 2018, and February, 2019, he was fourteen years of age.

A lengthy colloquy between the prosecutor, defense counsel, and the court transpired. The court, at times, appeared to struggle to pinpoint not only the state's theory of admissibility, but the distinct grounds for defense counsel's objection:

"The Court: . . . I don't want to speak for [defense counsel]. But I think right now the issue deals with whether this is uncharged misconduct or character evidence or propensity evidence or what this evidence is

going towards. So, what's . . . the defense argument here?

"[Defense Counsel]: . . . I can't defend it. It's not what he's accused of. And, if he said it, I don't think it shows his propensity to commit a sex crime. *It's a comment.* And, you know . . . now I have to have a trial within the trial on why each one of these comments was made, how many of them were made, to whom were they passed, what . . . was the context in which they were made, and so on. And so, it becomes this whole separate issue which I may prevail or I may not prevail. But, in the end, my client's going to be prejudiced by [the jury] hearing this testimony, which doesn't show that he's more or less likely to commit a sex crime.

\* \* \*

"The Court: . . . So, obviously, questions relating to anything that was said regarding the complainant . . . is a separate issue from basically what you want to ask now, which is, he's commented about a variety of other eleven year old girls; is that . . . where we're at? And . . . is it going to be as generic as what you just said?

"[The Prosecutor]: The . . . questions that I just asked . . . are the questions I intended to ask [U]. That's his—that the defendant had interest in young girls and would comment sexually on their bodies.

"The Court: Okay." (Emphasis added.)

After further discussion with counsel, the court stated, "[w]e certainly have lots of cases in the realm of sexual assault cases that . . . try to bring in either propensity [evidence] or other misconduct. But what this is, is a more generic [type of evidence]—[U is essentially testifying that] I've been with my father, and throughout my middle school years, he would make suggestive comments about eleven year old girls." The

court acknowledged that the prosecutor was not introducing the evidence as uncharged misconduct. The prosecutor emphasized that the evidence was being offered to shed light on the defendant's intent, not because it amounted to prior uncharged misconduct. The prosecutor stated: "Statements of a person to show . . . a sexual interest in young girls who are roughly the same age as the victim in this case, all right, shows a mental state of the defendant, okay, just in the sense that it's a statement of the defendant; it's a statement of a party opponent. . . . [A]nd it's relevant to the case because it shows an interest in young girls the victim's age." After defense counsel argued that the evidence was not admissible under § 4-4 of the Connecticut Code of Evidence as character evidence, the prosecutor stated that it was not being offered as character evidence but as a statement of the defendant. The court replied: "It's clearly propensity evidence."

Thereafter, the prosecutor argued that the evidence fell under § 4-5 (c) of the Connecticut Code of Evidence: "If Your Honor is looking for a pigeonhole . . . I guess it would fall under . . . [§] 4-5 section 3[2] which is— and I pick the crimes out and I take the wrongs out, it says acts of a person is admissible . . . to prove intent, identity, malice, mode of common plan or scheme, absence of mistake, accident, knowledge, or a system of criminal activity, or to corroborate crucial prosecution testimony. Okay. I guess we could fall into that general category. But it's just . . . a mental state [of] the defendant of an attraction to girls in the victim's age category." (Footnote added.) The prosecutor also invoked § 4-5 (b) of the Connecticut Code of Evidence: "[Subsection (b)] . . . talks about evidence of other sexual misconduct is admissible to prove propensity . . . . I

---

[2] In light of the prosecutor's language, I interpret his reference to "section 3" of § 4-5 to be a misstatement. The quoted language is taken from § 4-5 (c) of the Connecticut Code of Evidence.

don't know that [the evidence] necessarily falls under sexual misconduct. . . . [B]ut it falls under, hey, this girl has a nice butt and she's eleven years old."

Following a brief recess, the court stated its decision orally. The court admitted the evidence under § 4-5 (c) of the Connecticut Code of Evidence because it tended to prove the defendant's specific intent surrounding his physical contact with the victim. The court noted that sexual assault in the fourth degree in violation of General Statutes § 53a-73a (a) (1) (A) is a specific intent offense and that the state bore the burden of proving that, in making contact with the victim's intimate parts, the defendant acted for the purpose of sexual gratification. The court, relying on *State* v. *Juan J.*, 344 Conn. 1, 22, 276 A.3d 935 (2022), stated, "certainly, this evidence does go towards that particular issue."

Alternatively, relying on § 4-5 (b) of the Connecticut Code of Evidence, the court concluded that the evidence, which amounted to other sexual misconduct, was admissible to prove that the defendant had a propensity to engage in sexual misconduct. The court stated: "[T]he court must look at three considerations: one, that the evidence that's being proposed is not too remote in time [in relation to the conduct at issue in the present case]; two, that it is similar to the events as charged, that the conduct is similar enough that it is relevant and relates to the type of offenses charged; and that it was committed upon persons of a similar nature to those that are being charged in this particular case.

"I do feel that the evidence in this case does support all three of those findings, that the claimed time frame, as [U] has testified, is in close proximity to the allegations that are being made in this particular case. [U is] saying it was, basically, at the time because he references being between the ages of twelve and fourteen.

[U] was, in 2018 and 2019, fourteen years old. So, whether it was a year before, two years before, or on that particular, actual time of his being fourteen, it is in very close proximity to the time frame of the allegations here.

"The allegations are, in fact, similar in that they address what could be classified as an attraction to, or an observation in a sexual manner, to a child that is in the same age range as the complainant in this particular case. And I think that that really covers both two and three. As it turns out, because it certainly is committed—or the misconduct, so to speak—is committed upon persons of a similar age group and time frame to the complainant in this particular case.

"I will also note that the evidence is not so egregious or so distinct from the evidence in this particular case. And what I mean by that is that, for instance, here, we're talking about a touching. Perhaps if the propensity or misconduct evidence then related to an actual sexual assault in the first degree where there might be allegations of intercourse or something such as that, then I think that there's a stronger argument to say that its prejudicial effect is outweighed by the probative value.[3] But, in this case, the testimony is similar in nature to that which is being alleged—[the evidence at issue] is not so egregious or indistinguishable for the jury and can be, in fact, appropriately addressed and distinguished in the jury's evaluation of this case.

"And so, I am going to make a finding that it is relevant. It goes to the issues in terms of the elements of the offense, as you've heard my ruling with regard to the misconduct and the propensity, and that its relevancy

---

[3] Viewing the court's ruling in its entirety, it appears obvious to me that the court misspoke and that it clearly meant to state that, in the context of the hypothetical it had suggested, there was a stronger argument to say that "its probative value was outweighed by its prejudicial effect."

is not outweighed by its prejudicial effect." (Footnote added.)

Thereafter, the court addressed defense counsel's request for an immediate limiting instruction to the jury that the evidence was "being offered by the state to show whatever it is that it's being offered to show. I'm not sure I understand, but I guess it's propensity." The court replied that it had stated multiple reasons for the admission of the evidence. The court also stated that, prior to U's testimony about the comments made by the defendant, it would deliver a limiting instruction.[4] After discussing the content of that instruction with counsel, the court asked defense counsel if there was "anything that you'd like to add to that?" Defense counsel replied that he considered the instruction to be acceptable, but he was not waiving any objection to the evidentiary ruling itself. The prosecutor, however, observed that the limiting instruction addressed the use of the evidence to demonstrate only the defendant's "propensity or tendency to engage in criminal sexual behavior." The prosecutor argued that the instruction should also address the ground of intent, for the "evidence is being offered with regard to demonstrated sexual attractiveness to girls of that age" and that "the statements, in and of themselves, are not crimes." In response to the prosecutor's argument, the court stated that it would instruct the jury that it may consider the evidence not merely for the purpose of proving a propensity or tendency to engage in criminal sexual behavior, but for the issue of *intent*, lack of mistake, and motive. Defense counsel objected on the ground that the statements at issue were not a crime. The court

---

[4] The instruction that the court read to the jury is set forth in footnote 22 of the majority opinion. The court instructed the jury that the evidence at issue "may be considered to prove that the defendant had the propensity or tendency to engage in the type of criminal sexual behavior with which he is charged."

then stated that it would not include the additional language as requested by the prosecutor.[5]

The defendant challenges the admission of the evidence under both subsections (b) and (c) of § 4-5 of the Connecticut Code of Evidence. Before turning to the defendant's distinct arguments related to the alternative grounds on which the court admitted the evidence, I note the appropriate standard of review. "To the extent [that] a trial court's admission of evidence is based on an interpretation of the [Connecticut] Code of Evidence, our standard of review is plenary. For example, whether a challenged statement properly may be classified as hearsay and whether a hearsay exception properly is identified are legal questions demanding plenary review. . . . [A reviewing court will] review the trial court's decision to admit evidence, if premised on a correct view of the law, however, for an abuse of discretion." (Internal quotation marks omitted.) *State* v. *Bonds*, 172 Conn. App. 108, 116–17, 158 A.3d 826, cert. denied, 326 Conn. 907, 163 A.3d 1206 (2017).

I

The defendant argues that the trial court abused its discretion in admitting the evidence under § 4-5 (b) of the Connecticut Code of Evidence to prove propensity because his comments to U fell outside of the purview of that subsection. The defendant argues that the case law pertaining to subsection (b) strongly supports a

---

[5] I recognize that the limiting instruction is not a subject of this appeal. Nonetheless, I feel that it is worth noting that, in my view, the court's limiting instruction was inadequate for the reason set forth by the prosecutor. The prosecutor repeatedly indicated that the state's theory of admissibility was that the evidence shed light on the defendant's mental state, and the court admitted the evidence under § 4-5 (c) of the Connecticut Code of Evidence as proof of the defendant's specific intent. The court, however, did not instruct the jury that it could consider the evidence for the purpose of evaluating the defendant's intent but as evidence to prove his propensity to engage in the type of sexual behavior with which he was charged.

conclusion that the exception codified therein "is limited to other unlawful sexual conduct . . . ." The defendant also relies on the language of subsection (b), which expressly states that it is meant to govern "[e]vidence of other sexual misconduct . . . ." Conn. Code Evid. § 4-5 (b). According to the defendant, that language demonstrates that the type of evidence encompassed by the rule must pertain to conduct that violates a legal duty, dishonest conduct, or improper conduct. The defendant argues that "[a] father's conversation with his middle school son about the physical appearance of middle school girls is simply not improper, let alone unlawful. Granted, some people will find an adult male commenting on a middle schooler's 'butt' off-putting or inappropriate. Nevertheless, it is not a reasonable interpretation, in the context of the criminal law, to interpret a provision dealing with 'sexual misconduct' as governing lawful behavior that is merely subjectively distasteful or off-putting to some."

In terms of the plain language of § 4-5 (b) of the Connecticut Code of Evidence, the defendant also urges this court to consider that one of the requirements for evidence to be admissible under subsection (b) is that "the other sexual misconduct . . . was allegedly committed upon a person similar to the alleged victim . . . ." Conn. Code Evid. § 4-5 (b) (2). The defendant argues that "such language is entirely consistent with a reading of the exception [in subsection (b) such] that it applies to other sexual offenses—crimes are 'committed' and have victims—neutral, lawful conduct or speech is not ordinarily spoken of as being 'committed upon' someone. The mismatch of this language is heightened under the specific circumstances of the present case, where the supposed 'sexual misconduct' consisted of remarks made privately by the defendant to his son, with no indication that anyone else ever heard or was aware of them. Suggesting that private

speech between . . . a parent and his teen son was somehow misconduct 'committed upon' a third party entirely unaware and oblivious to the speech stretches to [the] breaking point the commonly understood meaning of the words."

The evidence at issue pertains to comments made by the defendant only to his son, U, about the physical appearance of middle school age girls. At the time of the argument on the admission of the evidence, the prosecutor expressed doubt that the evidence was admissible under subsection (b) of § 4-5 of the Connecticut Code of Evidence and aptly stated that the statements were not evidence of crimes but of the mental state of the defendant. The defendant objected to the admission of the statements under § 4-5 (b), arguing that the alleged evidence, rather than reflecting other sexual misconduct, consisted merely of comments made to U.

Section 4-5 (b) of the Connecticut Code of Evidence provides: "Evidence of other sexual misconduct is admissible in a criminal case to establish that the defendant had a tendency or a propensity to engage in aberrant and compulsive sexual misconduct if: (1) the case involves aberrant and compulsive sexual misconduct; (2) the trial court finds that the evidence is relevant to a charged offense in that the other sexual misconduct is not too remote in time, was allegedly committed upon a person similar to the alleged victim, and was otherwise similar in nature and circumstances to the aberrant and compulsive sexual misconduct at issue in the case; and (3) the trial court finds that the probative value of the evidence outweighs its prejudicial effect."

Subsection (b) of § 4-5 of the Connecticut Code of Evidence codifies a *limited* exception, applicable in sex crime cases, to the general common-law rule prohibiting the use of uncharged misconduct evidence to

prove propensity, and it is based on the exception recognized by our Supreme Court in *State* v. *DeJesus*, 288 Conn. 418, 953 A.2d 45 (2008). See *State* v. *Daniel W.*, 180 Conn. App. 76, 88, 182 A.3d 665 (noting that *DeJesus'* "exception to the admission of propensity evidence was subsequently codified in § 4-5 (b) of the Connecticut Code of Evidence"), cert. denied, 328 Conn. 929, 182 A.3d 638 (2018). Thus, *DeJesus* is highly instructive in interpreting subsection (b). In *DeJesus*, our Supreme Court stated: "We conclude that . . . public policy considerations militate in favor of recognizing a limited exception to the prohibition on the admission of uncharged misconduct evidence in sex crime cases to prove that the defendant had a propensity to engage in aberrant and compulsive criminal sexual behavior. We therefore join the federal courts, as well as a multitude of our sister states, that recognize a similar propensity exception in sexual assault cases. See, e.g., *State* v. *Roscoe*, 184 Ariz. 484, 491, 910 P.2d 635 (en banc) ('Arizona courts have recognized another specific exception to the general rule: other bad acts involving "sexual aberration" are admissible to show the defendant's propensity to commit a similar crime'), cert. denied, 519 U.S. 854, 117 S. Ct. 150, 136 L. Ed. 2d 96 (1996); *Hamm* v. *State*, 365 Ark. 647, 661, 232 S.W.3d 463 (2006) (Hannah, C. J., dissenting) ('This [c]ourt has recognized a "pedophile exception" to [Fed. R. Evid.] 404 [b], where the court has approved allowing evidence of similar acts with the same or other children when it is helpful in showing a proclivity for a specific act with a person or class of persons with whom the defendant has an intimate relationship. . . . The rationale for recognizing this exception is that such evidence helps to prove the depraved sexual instinct of the accused.' [Citation omitted.]); *State* v. *Tobin*, 602 A.2d 528, 531 (R.I. 1992) ('[i]n cases involving sexual assault, this court [has] expanded [the] list of exceptions [to the general prohibition against admission of uncharged misconduct] to

allow evidence of prior acts to show the defendant's "lewd disposition or . . . intent" '); *State* v. *Edward Charles L.*, 183 W. Va. 641, 651, 398 S.E.2d 123 (1990) ('collateral acts or crimes may be introduced in cases involving child sexual assault or sexual abuse victims to show the perpetrator had a lustful disposition towards the victim, a lustful disposition to children generally, or a lustful disposition to specific other children, provided such acts occurred reasonably close in time to the incident[s] giving rise to the indictment'); Fed. R. Evid. §§ 413, 414; Alaska R. Evid. § 404 (b) (West 2007); Ariz. R. Evid. § 404 (c) (West 2007); Cal. Evid. Code § 1108 (Deering 2004); 725 Ill. Comp. Stat. Ann. § 5/115-7.3 (West 2002); Ind. Code Ann. § 35-37-4-15 (Michie 1998); Iowa Code Ann. § 701.11 (West Sup. 2008); La. Code Evid. Ann. art. 412.2 (2006); Tex. Code Crim. Proc. Ann. art. 38.37 (Vernon 2005); see also *State* v. *Reyes*, 744 N.W.2d 95, 101 (Iowa 2008) ('[a]bout half the states have developed a "lustful disposition" or "depraved sexual instinct" exception which allows evidence of prior sexual misconduct involving children to be admitted into evidence'); *People* v. *Donoho*, [204 Ill. 2d 159, 175, 788 N.E.2d 707 (2003)] (noting that 'courts in [twenty-five] additional states have broadened the exceptions to the ban on other-crimes evidence in sexual offense cases')." (Emphasis omitted; footnote omitted.) *State* v. *DeJesus*, supra, 288 Conn. 470–72.

The well settled principles that govern our interpretation of statutes also govern our interpretation of the Connecticut Code of Evidence. See, e.g., *State* v. *Maguire*, 310 Conn. 535, 572, 78 A.3d 828 (2013). General Statutes § 1-2z provides: "The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous

and does not yield absurd or unworkable results, extra-textual evidence of the meaning of the statute shall not be considered." Because the Connecticut Code of Evidence does not define "misconduct," it is appropriate to turn to the dictionary to ascertain the commonly approved usage of that word. See, e.g., *Cochran* v. *Dept. of Transportation*, 350 Conn. 844, 851, 327 A.3d 901 (2024) (looking to dictionary definition when phrase was not defined in broader statutory scheme).

"Misconduct" is defined as "improper conduct; wrong behavior . . . unlawful conduct by an official in regard to his or her office, or by a person in the administration of justice, such as a lawyer, witness, or juror; malfeasance . . . to mismanage . . . to misbehave (oneself)." Random House Webster's Unabridged Dictionary (2d Ed. 2001) p. 1228. Under this broad definition, "misconduct" encompasses more than unlawful behavior, but such behavior must be improper or wrong. "Improper" is defined as "not strictly belonging, applicable, correct, etc. . . . abnormal or irregular . . . ." Id., p. 963. "Wrong" is defined as "not in accordance with what is morally right or good . . . not correct in action, judgment, opinion, method, etc. . . . ." Id., p. 2193.

The behavior at issue here fails to meet that standard. The evidence pertained to a private conversation that the defendant had with his son. He commented on the physical appearance of female middle school students, saying that they were "pretty" or had "nice butt[s] . . . ." In my view, these comments may have been in poor taste, but I do not view them as improper or wrong. And they certainly are not unlawful. *DeJesus* and the cases cited therein, all of which involved the admission of sexual conduct that was unquestionably unlawful, strongly supports my conclusion that the evidence at issue in the present case falls outside of the limited exception that our Supreme Court recognized in

*DeJesus*. Thus, the comments do not constitute misconduct.

Furthermore, even if the comments amounted to misconduct, they fall outside of the scope of § 4-5 (b) of the Connecticut Code of Evidence because they were neither "committed upon a person similar to the alleged victim" nor were they "similar in nature and circumstances to the aberrant and compulsive sexual misconduct at issue in the case . . . ." Conn. Code Evid. § 4-5 (b) (2). The court found that the misconduct was "committed upon persons of a similar age group and time frame to the complainant in this particular case." In its appellate brief, the state argues that "the charged conduct involved an eleven year old girl and the proffered misconduct . . . involved middle school aged girls ages twelve to fourteen. . . . The defendant's comments about middle school aged girls was similar in nature to the defendant's conduct with the victim . . . ." I am not persuaded. As I previously observed, there was no evidence that the victim in this case or any female middle school student was aware of the defendant's comments, which were made privately to U. Thus, the comments could not be found to have been "committed" upon a person similar to the female victim in this case.

For the foregoing reasons, I conclude that the court's admission of the evidence was premised on an incorrect view of the law. The comments did not fall within the scope of § 4-5 (b) of the Connecticut Code of Evidence. Accordingly, their admission under that subsection was improper.

II

Because the court's evidentiary ruling rested on alternative grounds, and the defendant challenges both grounds on appeal, it is necessary to consider the defendant's claim that the court improperly admitted the

evidence of the defendant's comments made to U under § 4-5 (c) of the Connecticut Code of Evidence.

Subsection (c) provides: "Evidence of other crimes, wrongs or acts of a person is admissible for purposes other than those specified in subsection (a), such as to prove intent, identity, malice, motive, common plan or scheme, absence of mistake or accident, knowledge, a system of criminal activity, or an element of the crime, or to corroborate crucial prosecution testimony." Conn. Code Evid. § 4-5 (c).

The defendant correctly recognizes that the state's theory of admissibility under subsection (c) of § 4-5 of the Connecticut Code of Evidence was that the comments that the defendant allegedly made to U were admissible to demonstrate that the defendant acted with the specific intent to obtain sexual gratification, an essential element of sexual assault in the fourth degree in violation of § 53a-73a (a) (1) (A), as charged. The defendant argues that, "[b]ecause [the victim's] testimony regarding the various alleged incidents [that occurred between her and the defendant], however, was unequivocal with regard to the sexual nature of the touching, the state did not need evidence of uncharged acts (comments) by the defendant to prove that he intended to obtain sexual gratification." The defendant argues that "[t]he acts described by [the victim] in her testimony, such as the defendant grabbing her hips and moving her so their genitals rubbed together, and the defendant having [the victim] rub his erect penis, are clearly, if believed by the jury, acts [committed] for the purpose of sexual gratification." The defendant relies on the well settled proposition that, in light of the risks inherent in the use of uncharged misconduct evidence, its use to demonstrate intent must be restricted to cases in which it is *necessary* for the state to prove that element of an offense.

The defendant relies on prior case law, particularly *State* v. *Juan J.*, supra, 344 Conn. 1, in which our Supreme Court stated: "We have noted the fine line between using uncharged misconduct to prove intent and using it to show the defendant's bad character or propensity to commit the crime charged. . . . The risk that the evidence will be used improperly is particularly high when the uncharged misconduct is extrinsic, meaning, separate and distinct from the crime charged, because the uncharged misconduct is practically indistinguishable from prohibited propensity evidence. Uncharged misconduct may logically be used to rebut a claim of mistake or no knowledge . . . but to use misconduct at one time to prove an intent to do the same thing at another time borders on the forbidden theme of once a thief always a thief. . . . In light of these concerns, the state's introduction of uncharged misconduct is properly limited to cases in which *the evidence is needed* to prove a fact that the defendant has placed, or conceivably will place, in issue, or a fact that the statutory elements obligate the government to prove." (Citations omitted; emphasis added; internal quotation marks omitted.) Id., 20. The principles articulated in *Juan J.* are consistent with long-standing precedent that urges trial courts to carefully weigh the relevancy of proffered uncharged misconduct evidence "in light of the issues and the other evidence available to the prosecution against the degree to which the jury will probably be roused by the evidence." *State* v. *Onofrio*, 179 Conn. 23, 29, 425 A.2d 560 (1979).

The state primarily argues that this court should decline to reach the merits of the defendant's argument because it is being raised for the first time on appeal. The state also argues that the trial court properly admitted the evidence in light of the state's burden to prove the essential element of specific intent and the fact that, at the time of trial, the defendant did not relieve the

state of its burden of proving his specific intent. The state further argues that, "at the time the parties discussed the misconduct evidence, it was at least conceivable that the defendant would argue to the jury that he had physically touched the victim but not for any sexual gratification."

Turning first to the issue of reviewability, having carefully reviewed the arguments advanced before the trial court, it is clear that the state's theory of admissibility was that the comments made by the defendant to U were admissible because they demonstrated the defendant's mental state when he had physical contact with the victim. In other words, the state introduced the evidence for the purpose of establishing the defendant's intent, specifically, his sexual interest in girls similar in age to the victim in this case, and the court admitted the evidence on this ground. The defendant's objection at the time of trial, however, was that the evidence was more prejudicial than probative. The defendant argues on appeal that the argument he presently raises is encompassed by that broader argument. Despite the areas in which these arguments unquestionably overlap, I am persuaded that the court was not fairly apprised that the defendant's prejudice argument was based on the specific legal theory on which he now relies. The defendant did not argue before the trial court, as he now argues on appeal, that the evidence was not probative because, in light of other evidence of the defendant's specific intent already before the jury, it was not necessary for the state to satisfy its burden of proof. Instead, the defendant argued that the evidence lacked probative value because it did not shed light on the defendant's propensity to commit a crime of a sexual nature. "It is well settled that this court will not entertain claims of evidentiary error that were not distinctly raised before the trial court." (Internal quotation marks omitted.)

*State* v. *Papineau*, 182 Conn. App. 756, 780, 190 A.3d 913, cert. denied, 330 Conn. 916, 193 A.3d 1212 (2018).

Although I agree with the state that the defendant did not preserve the present claim, the record provides me with an adequate basis on which to conclude that the defendant has demonstrated that the ruling at issue reflected an abuse of discretion. As previously set forth herein, our Supreme Court has explained that a court must consider the *necessity* of the evidence in the state's case. The court's inquiry must focus on (1) the issues that are before the jury in light of the essential elements of the offense and (2) any other evidence available to the prosecution to prove intent. Intent, of course, is "always at issue unless directly and explicitly admitted before the trier of fact." *State* v. *Baldwin*, 224 Conn. 347, 356, 618 A.2d 513 (1993). Although *Juan J.* involved the admissibility of evidence of uncharged misconduct under § 4-5 (b) of the Connecticut Code of Evidence in a general intent crime case, in which the defendant's theory of defense was that the criminal conduct at issue did not occur at all, the court's admonition as to the limits of the use of such evidence broadly applied to both general and specific intent offenses.

After the parties in the present case submitted their briefs to this court, our Supreme Court officially released its decision in *State* v. *Marcello E.*, 351 Conn. 345, 330 A.3d 577 (2025).[6] Unlike *Juan J.*, *Marcello E.* resolved a claim that a trial court improperly admitted

---

[6] I recognize that the trial court did not have the benefit of *Marcello E.* at the time of its ruling and that the decision in *Marcello E.* was not available to the parties at the time they filed their appellate briefs. I nonetheless do not believe that it is unfair to either the parties or to the trial court to rely on *Marcello E.* here. In my view, *Marcello E.* did not announce a substantive change in our decisional law but provided greater clarity as to the limitation already set forth in *Juan J.*, and the cases cited therein, with respect to the proper circumstances in which prior misconduct evidence may be admitted to prove intent under § 4-5 (c) of the Connecticut Code of Evidence.

prior misconduct evidence under § 4-5 (b) of the Connecticut Code of Evidence in a specific intent crime case. Id., 347. Specifically, the defendant in *Marcello E.* claimed "that the trial court had abused its discretion, causing him harm, by admitting evidence of two incidents of prior misconduct, during which he physically assaulted the victim, to demonstrate his specific intent to cause her serious bodily injury, an element of the charged offense." Id.

The court in *Marcello E.* recognized that the state bore the burden of proving the defendant's specific intent. In concluding that the trial court had improperly admitted evidence of the two instances of prior misconduct, however, our Supreme Court was persuaded by the defendant's argument that "the trial court improperly concluded that the probative value of the prior misconduct evidence outweighed its prejudicial effect because the other evidence presented by the state (the highly violent and injurious nature of the attack itself) definitively established the requisite specific intent, [meaning that] the uncharged misconduct evidence could have no practical effect on the [jurors] other than to convince them that the defendant had violent tendencies and a propensity toward violence against [the victim] in particular." (Internal quotation marks omitted.) Id., 358. The court stated: "When the probative value of the prior misconduct evidence is marginal and its prejudicial tendencies [are] clear . . . the discretion invested in the trial court is not a license to depart from the principle that evidence of other crimes, having no substantial relevancy except to ground the inference that the accused is a bad person and hence probably committed this crime, must be excluded." (Internal quotation marks omitted.) Id., 357–58. The court therefore concluded that, in light of the evidence of the victim's significant physical injuries, "the assailant's intent to cause serious bodily injury was unquestionable . . . ."

Id., 361. Thus, "[o]nce the presentation of evidence began, the prejudicial impact of the prior misconduct only increased as its merely cumulative nature materialized and its probative value continued to wane . . . ." Id., 360. The court stated: "We agree with the defendant that the slight probative value of the prior misconduct evidence did not outweigh its prejudicial effect. The prior misconduct evidence was admitted as relevant solely to prove the assailant's specific intent to commit the charged offense, not his motive or identity. Because the trial court was on notice, before it ruled on the admissibility of the prior misconduct evidence, that (1) there would be ample other evidence demonstrating the assailant's specific intent, (2) the assailant's identity, not his intent, was truly what would be at issue, and (3) the victim would testify early in the trial about the prior misconduct and then identify the defendant as her assailant, we conclude that the trial court abused its discretion by prematurely admitting the prior misconduct evidence, considering that its value was marginal and its prejudicial tendencies clear." (Internal quotation marks omitted.) Id., 358–59.

After discussing relevant and well established precedents on this issue, the court in *Marcello E.* reiterated the limits on the use of such evidence that it had touched on in its prior decisions. The court stated: "We are particularly concerned about the dangerous prejudicial weight that uncharged misconduct evidence can bring to a trial, considering the powerful potential for this type of evidence to impermissibly demonstrate a defendant's propensity for criminal behavior . . . ." Id., 362. The court made clear "that prior misconduct evidence should not be the state's tool of first resort in proving an element of the charged crime, considering the typically slight value and particularly grave danger of such evidence." Id., 365.

In the present case, the nature of the evidence already before the jury at the time the state offered the evidence at issue reflected that the only issue before the jury was whether the physical contact described by the victim, in fact, occurred. If it did, the defendant's specific intent in engaging in such contact involving intimate parts— that is, the factual issue of whether the defendant acted for his sexual gratification—was not in doubt. Stated otherwise, if the contact described by the victim occurred, it could hardly be said that the state *needed* to rely on the defendant's statements to U to prove the defendant's specific intent. Accordingly, I conclude that the evidence was merely cumulative in nature and, thus, the court abused its discretion in admitting the evidence under § 4-5 (c) of the Connecticut Code of Evidence.[7]

Because I agree that the defendant failed to prove that the erroneous admission of the challenged evidence was harmful, I respectfully concur with the result reached by the majority.

---

[7] Certainly, the jury could have drawn reasonable inferences about the defendant's specific intent to obtain sexual gratification from the evidence of the physical contact between the defendant and the victim. I note, however, as does the majority, that the jury also could have drawn reasonable inferences about the defendant's specific intent to obtain sexual gratification from other evidence, *beyond the sexual contact itself*, the admission of which the defendant does not challenge in this appeal. This evidence includes, but is not limited to, U's observations of the defendant's "amicable" interactions with the victim, U's testimony about comments that the defendant made to him about the victim's physical appearance, and U's testimony that the defendant stated that he desired to have sex with the victim when she reached eighteen years of age. This evidence, which was cumulative of the evidence at issue in this claim, was available to the state to prove the defendant's specific intent to obtain sexual gratification.